# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2019

Lyle W. Cayce
Clerk

No. 17-60768

ROSA MARIA NAVARRETE-LOPEZ,

     Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

     Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Petitioner Rosa Maria Navarrete-Lopez asks this court to reverse a decision by the Board of Immigration Appeals denying her motion to reopen removal proceedings. Navarrete-Lopez alleges that she never received a Notice of Hearing. Finding no abuse of discretion in the Board's determination that Navarrete-Lopez failed to rebut the presumption of receipt, we deny the petition.

No. 17-60768

## BACKGROUND[1]

Rosa Maria Navarrete-Lopez is a native and citizen of El Salvador. On March 14, 2004, she entered the United States without being admitted or paroled. That same day, the Department of Homeland Security ("DHS") served her personally with a Notice to Appear ("NTA"), charging her with being removable and notifying her of a hearing on a date and at a time "to be set." The NTA also informed Navarrete-Lopez that she had an obligation to keep immigration authorities apprised of her current mailing address.[2] At that time, Navarrete-Lopez told immigration officers that she would reside and receive mail at an address on South Dairy Ashford Road in Houston, Texas.

A short while later, on April 3, Navarrete-Lopez filed a change-of-address form designating a new address on Valley View Lane, also in Houston. The immigration court received the form on April 8.

What happened next is the subject of debate. According to the respondent, a "Notice of Hearing" ("NOH") was sent to Navarrete-Lopez at the Valley View address on June 30 via regular mail. Navarrete-Lopez does not dispute that there is a document in the record entitled "Notice of Hearing" that, on its face, reflects a regular mail send date around that time.[3] That document is undisputedly addressed to Navarrete-Lopez, at the Valley View address, and notices a hearing set for August 24, 2004 at 9:00 a.m. There is no evidence that it was ever returned as undeliverable. But Navarrete-Lopez insists that she never received it.

---

[1] The following facts are undisputed unless otherwise specified.

[2] Navarette-Lopez also received the NTA orally in Spanish.

[3] The NOH bears "May 13, 2004" after the word "Date" at the top of the page. In a section at the bottom of the page entitled "Certificate of Service," the NOA bears a handwritten date of "6-30-04." Neither party has explained this six-week lag. Although the respondent cites June 30 as the send date and the petitioner cites May 13, this distinction is immaterial to the ultimate issue.

The parties agree that Navarrete-Lopez did not attend the August 24 hearing, and that an Immigration Judge ("IJ") entered an *in absentia* order of removal at that time.

Seven years passed. In late 2011, Navarrete-Lopez's daughter filed an I-130 Petition for Alien Relative on behalf of Navarrete-Lopez. DHS approved the petition in April 2012. According to Navarrete-Lopez, after the petition was approved, she consulted with a lawyer about adjusting her status to that of a lawful permanent resident. To that end, she explains, her attorney made a Freedom of Information Act ("FOIA") request. The request apparently uncovered the August 2004 *in absentia* removal order, about which Navarrete-Lopez claims she had no prior knowledge.[4]

Then five more years passed. On February 15, 2017, Navarrete-Lopez filed a motion to reopen the removal proceedings that had commenced in 2004. An affidavit from her and an affidavit from her daughter accompanied the motion. Navarrete-Lopez's affidavit recounts the original change of address from South Dairy Ashford Road to Valley View and states that she had moved from place to place in subsequent years. The affidavit explains that, nevertheless, Valley View remained—from 2004 up to that present time—a suitable address at which to receive mail because it was her daughter's stable residence. Both affidavits affirm that an NOH was never received at Valley View. Neither affidavit discusses the FOIA request or the passage of five years between Navarrete-Lopez's discovery of the removal order and her motion to reopen.

The IJ denied Navarrete-Lopez's motion to reopen, finding that she had not dislodged the presumption that the NOH was delivered to her mailing

---

[4] The FOIA request is not in the record but the respondent does not dispute its existence.

address. The BIA affirmed, reasoning that the "totality of the circumstances" supported the IJ's conclusion. Specifically, the BIA observed that the NOH was not returned as undeliverable, that there was no evidence corroborating Navarrete-Lopez's daughter's residency at the Valley View address, that Navarrete-Lopez had not submitted a prior application for relief indicating an incentive to appear, and that Navarrete-Lopez demonstrated a lack of "due diligence."

Navarrete-Lopez timely filed a petition for review in this court.

## STANDARD OF REVIEW

We review the denial of a motion to reopen under "a highly deferential abuse-of-discretion standard." *Garcia-Nuñez v. Sessions*, 882 F.3d 499, 505 (5th Cir. 2018). The BIA abuses its discretion "when it issues a decision that is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies." *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014). The BIA's factual findings are reviewed for substantial evidence and may not be overturned "unless the evidence compels a contrary conclusion." *Torres Hernandez v. Lynch*, 825 F.3d 266, 268 (5th Cir. 2016) (quotation omitted).

## DISCUSSION

In ruling on a motion to reopen, "the focus is whether the alien actually received the required notice and not whether the notice was properly mailed." *Garcia-Nuñez*, 882 F.3d at 506 (quotation omitted). The court nevertheless presumes "that public officials, including Postal Service employees, properly discharge their duties." *Maknojiya v. Gonzales*, 432 F.3d 588, 589 (5th Cir. 2005). There is a "strong presumption of effective service" when the notice is sent by certified mail. *Torres Hernandez*, 825 F.3d at 269 (quotation omitted).

The presumption is "weaker" when notice is sent by regular mail, as it was here. *Id.*

Under BIA precedent, "all relevant evidence," both direct and circumstantial, should be considered to determine whether the petitioner has overcome the weaker presumption of effective service, and an "inflexible and rigid application of the presumption of delivery is not appropriate . . . ." *Matter of M-R-A-*, 24 I. & N. Dec. 665, 674–76 (BIA 2008). The BIA has outlined the following list of factors to consider in reaching that determination:

> (1) the respondent's affidavit;
>
> (2) affidavits from family members or other individuals who are knowledgeable about the facts relevant to whether notice was received;
>
> (3) the respondent's actions upon learning of the in absentia order, and whether due diligence was exercised in seeking to redress the situation;
>
> (4) any prior affirmative application for relief, indicating that the respondent had an incentive to appear;
>
> (5) any prior application for relief filed with the Immigration Court or any prima facie evidence in the record or the respondent's motion of statutory eligibility for relief, indicating that the respondent had an incentive to appear;
>
> (6) the respondent's previous attendance at Immigration Court hearings, if applicable; and
>
> (7) any other circumstances or evidence indicating possible nonreceipt of notice.

*Id.* at 674. That list is, importantly, not exhaustive. *Id.* ("We emphasize that these are just examples of the types of evidence that can support a motion to reopen. Immigration Judges are neither required to deny reopening if exactly such evidence is not provided nor obliged to grant a motion, even if every type

of evidence is submitted. Each case must be evaluated based on its own particular circumstances and evidence.").

The BIA, applying the *M-R-A-* factors and looking to the "totality of the circumstances," did not abuse its discretion in determining that Navarrete-Lopez failed to overcome the weaker presumption of effective service. As the BIA observed, the NOH was not returned as undeliverable and Navarrete-Lopez did not indicate an incentive to appear by submitting a prior affirmative application for relief. The BIA's conclusion that Navarrete-Lopez demonstrated a lack of "due diligence" is also supported by the record.[5]

Navarrete-Lopez urges that it was error for the BIA to highlight the lack of evidence corroborating her daughter's residency at the claimed address during the relevant time period. To be sure, under our precedent, affidavits that lack any evidentiary flaw—despite their self-serving nature—may be taken as competent, standalone evidence to support a claim that notice was

---

[5] There appears to be some tension in the case law regarding how to assess "due diligence." Under the BIA's own precedent in *M-R-A-*, the date that the removal order is discovered—not the date the removal order is entered—starts the due-diligence clock. 24 I. & N. Dec. at 674 (naming a relevant factor as "the respondent's actions *upon learning of the in absentia order*, and whether due diligence was exercised in seeking to redress the situation") (emphasis added). Our court has recognized that timeframe. *See, e.g.*, *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 151 (5th Cir. 2018) ("[T]he BIA did not err in refusing to permit reopening despite the fact that Mauricio-Benitez sought counsel and filed his motion soon after *discovering the* in absentia *order* through a FOIA request.") (emphasis added). But we have also affirmed the BIA's due-diligence finding on the basis of a petitioner's actions (or inaction) from the date of receiving the NTA to the date of filing the motion to reopen. *See, e.g.*, *id.* ("Mauricio-Benitez—despite *having been personally served with a NTA* informing him that he would receive a notice setting a hearing date and time—made no effort to correct [a spelling error on] his NTA, update his mailing address with the court when he moved six months after receiving the NTA, or otherwise follow up on his immigration status for thirteen years.") (emphasis added). And we have affirmed due-diligence findings based on delay between the removal hearing and the motion to reopen. *See, e.g.*, *Sosa-Perdomo v. Lynch*, 644 F. App'x 320, 321 (5th Cir. 2016) ("[T]he BIA did not misapply [*M–R–A–*] by taking into account Sosa–Perdomo's lack of diligence in failing to file her motion to reopen until over nine years after *she was ordered removed in absentia*.") (emphasis added). We need not resolve this thicket today because in this case, under any measure, the BIA would not have abused its discretion in making the due-diligence finding.

never received. *Maknojiya*, 432 F.3d at 590 ("In the case of failed mail delivery when regular mail is used, the only proof is the alien's statement that he or she did not receive notice.") (citation omitted); *see also Torres Hernandez*, 825 F.3d at 269 ("[W]hen service is furnished via regular mail, an alien's statement in an affidavit that is without evidentiary flaw may be sufficient to rebut the presumption of effective service."); *Settim v. Gonzales*, 171 F. App'x 436, 437 (5th Cir. 2006) ("Where the correspondence is sent by regular mail, and where there is no other evidence that the petitioner was attempting to avoid proceedings, the petitioner's statement that he or she did not receive the correspondence is sufficient evidence that mail delivery failed."); *Barahona-Cardona v. Holder*, 417 F. App'x 397, 399 (5th Cir. 2011) ("[A]n affidavit of non-receipt can be sufficient to rebut the weaker presumption of delivery that arises under regular mail."). But we note that *M-R-A-* permits consideration of "other circumstances or evidence indicating possible nonreceipt of notice." 24 I & N. Dec. at 674. At its core, the *M-R-A-* inquiry is fact-specific, flexible, and multi-factorial. In this case, there were various circumstances—including no non-deliverable return, no prior affirmative applications for relief, and lack of due diligence—weighing in favor of the presumption of receipt. Because the BIA reached a final determination, properly, based on the "totality of the circumstances," and under our highly deferential standard of review, we find no abuse of discretion and accordingly DENY the petition.