# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
April 19, 2022
Lyle W. Cayce
Clerk

No. 20-60008

MARCELO EUGENIO RODRIGUEZ, *also known as* MARCELO RODRIGUEZ ANDUEZA,

*Petitioner*,

*versus*

MERRICK GARLAND, U.S. ATTORNEY GENERAL,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
BIA No. A207 311 796

Before HIGGINBOTHAM, WILLETT, and DUNCAN, *Circuit Judges*.
PER CURIAM:

The petition for panel rehearing is DENIED.

Additionally, the court having been polled at the request of one of the members of the court and a majority of the judges who are in active service not having voted in favor, rehearing en banc is DENIED.[1] In the en banc poll, eight judges voted in favor of rehearing (Chief Judge Richman and

---

[1] FED. R. APP. P. 35 and 5TH CIR. R. 35 I.O.P.

1

Judges Jones, Smith, Elrod, Haynes, Ho, Oldham, and Wilson), and nine judges voted against rehearing (Judges Stewart, Dennis, Southwick, Graves, Higginson, Costa, Willett, Duncan, and Engelhardt).

ENTERED FOR THE COURT:

PATRICK E. HIGGINBOTHAM
*United States Circuit Judge*

STUART KYLE DUNCAN, *Circuit Judge*, joined by HIGGINBOTHAM, *Senior Circuit Judge*, and SOUTHWICK, HIGGINSON, and WILLETT, *Circuit Judges*, concurring in denial of en banc rehearing:

The court has declined to rehear this case en banc. That's the right call. The panel's decision was compelled by *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), and has since been joined by the Ninth Circuit. *See Singh v. Garland*, 24 F.4th 1315, 1319 (9th Cir. 2022).[1] Our en banc resources are rarely well spent stirring up circuit splits.

A few responses to my esteemed dissenting colleagues.

First, the main dissent says "textual and contextual" differences distinguish the *in absentia* provision in this case from the stop-time provision in *Niz-Chavez*. *See post* at 6 (Elrod, J., dissenting).[2] Not so. Both reference the definition of "a 'notice to appear'" in 8 U.S.C. § 1229(a):

- Stop-time is triggered "when the alien is served a notice to appear under section 1229(a) of this title." 8 U.S.C. § 1229b(d)(1).

- *In absentia* removal may be rescinded if the alien "did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title[.]" *Id.* § 1229a(b)(5)(C)(ii).

---

[1] "We . . . join the Fifth Circuit in holding that the Supreme Court's 'separate interpretation of the § 1229(a) notice requirements in *Niz-Chavez* [ ] applies in the *in absentia* context' in addition to the stop-time-rule context." *Ibid.* (quoting *Rodriguez v. Garland*, 15 F.4th 351, 355 (5th Cir. 2021)).

[2] The dissent also repeatedly accuses the panel of acting without the benefit of briefing on *Niz-Chavez*. *See post* at 1 (Elrod, J., dissenting) (claiming panel acted "without the benefit of . . . briefing on *Niz-Chavez*"); *id.* at 3 (same); *id.* at 10 (same). That is quite mistaken. *Niz-Chavez* came out after briefing concluded, and so the parties informed the panel about the decision and subsequent developments through 28j letters. True, the panel could have requested supplemental briefing. But that seemed superfluous given the *six* 28j letters totaling about 2,000 words.

- In removal proceedings, "written notice (in this section referred to as a 'notice to appear')" shall be given, specifying various things. *Id.* § 1229(a)(1).

*Niz-Chavez* held that stop-time requires a single notice; notices-by-installment won't do. 141 S. Ct. at 1486. Why? The letter "a," signifying a "single document," appears in both the referencing provision (§ 1229b(d)(1)) and the definition (§ 1229(a)(1)): "Not once but twice it seems Congress contemplated 'a' single document." *Id.* at 1480, 1481.

In this case, the only difference is the lack of one "a." Instead of "a notice to appear," the *in absentia* provision demands "notice *in accordance with* paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). The dissent thinks this difference makes all the difference. *Post* at 8 (Elrod, J., dissenting). It doesn't. *Niz Chavez* underscored that § 1229(a)(1) "stubbornly require[s] 'a' written notice containing all the required information." 141 S. Ct. at 1480. The *in absentia* provision pointedly requires "notice in accordance with" the very same definition, § 1229(a)(1)—which, again, *stubbornly requires* one document. 8 U.S.C. § 1229a(b)(5)(C)(ii). There is no meaningful difference between the two referencing provisions. They use different words (two "a's" vs. "in accordance with") to require the same thing: a single notice.

The dissent's best argument relies on a counterfactual in *Niz-Chavez*. *See post* at 8 (Elrod, J., dissenting). The Court imagined a law merely requiring "'notice' in its noncountable sense," like one demanding the government "provide[] 'notice' (or perhaps 'sufficient notice') of the mandated information." *Niz-Chavez*, 141 S. Ct. at 1481. "This case," the dissent says, "appears to be the Court's counterfactual." *Post* at 8 (Elrod, J., dissenting). It's not. The *in absentia* provision doesn't merely demand "notice" or "sufficient notice," but "notice *in accordance with* [§ 1229(a)(1)

or (2)]." 8 U.S.C. § 1229a(b)(5)(C)(ii) (emphasis added). That's not "notice" in some fuzzy "noncountable sense." That's notice "in accordance with" a statute the Supreme Court has told us "stubbornly require[s] 'a' written notice containing all the required information." *Niz-Chavez*, 141 S. Ct. at 1480.

The dissent also proposes an alternate way of finding sufficient notice: the second notice "might have satisfied 'notice' in accordance with paragraph . . . (2)." *Post* at 9 (Elrod, J., dissenting); *see* 8 U.S.C. §§ 1229a(b)(5)(C)(ii); 1229(a)(2). No, it couldn't have. Subsection (a)(2) applies to a "*change* in time or place of [removal] proceedings" and guarantees a written notice of "the *new* time or place of the proceedings." 8 U.S.C. § 1229(a)(2) (emphases added). The provision can't apply here. The alien never got an *initial* "time or place," so there was nothing to "change" and any subsequently set "time or place" wouldn't be "new." The Supreme Court has settled this point. In *Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018), the Court explained that "paragraph (2) [in § 1229(a)] presumes that the Government has already served a 'notice to appear under section 1229(a)' that specified [the required] time and place."[3] So (a)(2) is a red herring. It doesn't provide another way to find valid *in absentia* notice here.

Both dissents suggest the court should defer to the BIA's recent decision in *Matter of Laparra*, 28 I. & N. Dec. 425 (BIA 2022), which disagreed with the panel. *See post* at 11 (Elrod, J., dissenting); *post* at 2 (Ho,

---

[3] *See also Niz-Chavez*, 141 S. Ct. at 1485 (emphases added) (under § 1229(a)(2), "*once the government serves a compliant notice to appear*, [the statute] permits it to send a supplemental notice amending the time and place of an alien's hearing if logistics require *a change*"); *Singh*, 24 F.4th at 1319–20 (concluding, "by the plain text of [§ 1229(a)(2)] there can be no valid notice under paragraph (2) without valid notice under paragraph (1)," and registering "surprise[]" that the government would argue otherwise given that the Supreme Court already adopted this plain reading of paragraph (2) in *Pereira*" (citation omitted)).

J., dissenting); *see Laparra*, 28 I. & N. Dec. at 436. Even assuming *Chevron* deference applies, however, we needn't accept an agency's reading that is "patently inconsistent with the statutory scheme." *Texas v. United States*, 809 F.3d 134, 178 n.160 (5th Cir. 2015) (citation omitted), *affirmed by an equally divided court*, 577 U.S. 1101 (2016). In *Laparra*, the BIA theorized that an alien—previously "served with a noncompliant notice to appear" under § 1229(a)(1)—could still be removed *in absentia* if served with a notice under § 1229(a)(2) specifying the omitted information. 28 I. & N. Dec. at 434.

That flies in the face of the Supreme Court's *Pereira* decision, which *Laparra* ignored. As *Pereira* explained, a valid (a)(2) notice "presumes that the Government has already served a 'notice to appear under section 1229(a)' that specified [the required] time and place." 138 S. Ct. at 2114. "Otherwise," said the Court, "there would be no time or place to 'change or postpon[e].'" *Ibid.* (quoting § 1229(a)(2)). So *Laparra* mangles "[t]he plain text [of § 1229(a)], the statutory structure, and common sense." *Singh*, 24 F.4th at 1319. No *Chevron* for *Laparra*.[4]

Finally, the main dissent warns that the panel decision botches an "extraordinarily important" issue and will reopen many *in absentia* removals. *Post* at 1 (Elrod, J., dissenting). Those concerns are serious and, frankly, I share them. Not everyone loved *Niz-Chavez*. *See* 141 S. Ct. at 1488 (Kavanaugh, J., dissenting) ("I find the Court's conclusion rather perplexing as a matter of statutory interpretation and common sense."). But we have to apply it and that's what the panel did.

---

[4] *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 57 (2014) (plurality op.) ("Under *Chevron,* the statute's plain meaning controls, whatever the Board might have to say." (citation omitted)).

Besides, the *Niz-Chavez* majority rejected these kinds of "raw consequentialist" criticisms.[5] The Supreme Court sometimes breaks things. *See McGirt v. Oklahoma*, 140 S. Ct. 2452, 2482 (2020) (Roberts, C.J., dissenting) ("[T]he Court has profoundly destabilized the governance of eastern Oklahoma."). If faithfully applying *Niz-Chavez* further backlogs our immigration system, this inferior court judge can only wait to see if Congress changes the law or the Supreme Court changes its mind.[6]

I respectfully concur in the decision not to rehear this case en banc.

---

[5] *Compare id.* at 1495 (Kavanaugh, J., dissenting) ("[T]he Court's decision will impose significant costs on the immigration system, which of course means more backlog for other noncitizens involved in other immigration cases.") (emphasis removed), *with id.* at 1486 (majority op.) (criticizing dissent for "assess[ing] the resulting 'costs' and 'benefits'" of majority opinion and stating "that kind of raw consequentialist calculation plays no role in our decision").

[6] In passing, the main dissent also claims the panel "leapfrogged over th[e] threshold issue" of "whether Rodriguez updated his address and was therefore entitled to notice at all." *Post* at 3 (Elrod, J., dissenting). There was no leapfrogging. Whether Rodriguez proved he changed his address between the first and second notices was relevant to rebutting the "presumption of effective service" for the second notice. *See Matter of M-R-A-*, 24 I. & N. Dec. 665, 674 (BIA 2008); *see also* § 1229(c). That issue became moot when *Niz-Chavez* came out. Because *Niz-Chavez* requires a single notice to appear, it doesn't matter whether Rodriguez rebutted the presumption that the second notice was served on him.

JENNIFER WALKER ELROD, *Circuit Judge*, joined by JONES, SMITH, and WILSON, *Circuit Judges*, dissenting from the denial of *en banc* rehearing:

The court should have taken this case *en banc*. Breaking from our precedents, the panel opinion holds that aliens removed *in absentia* after consciously failing to appear at their removal proceedings may reopen their cases and apply for rescission of removal if notice of their proceedings was sent in two documents instead of one. According to the panel, the Supreme Court's recent decision in *Niz-Chavez v. Garland* requires this result. In that case, the Supreme Court held that the stop-time rule in 8 U.S.C. § 1229b(d)(1) does not preclude cancellation of removal until the alien receives in a single document all of the information described in 8 U.S.C. § 1229(a)(1). In this case, without the benefit of oral argument or briefing on *Niz-Chavez*, the panel opinion applies *Niz-Chavez* to different statutory language in a different immigration context. And it does so contrary to a precedential decision of the BIA, released after the panel opinion but before the call for an *en banc* poll. We normally defer to these BIA decisions; we should have considered whether to do so *en banc*.

This question is also extraordinarily important. Motions to reopen for lack of notice may be filed "at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii). Under the panel opinion's holding, virtually every alien ordered removed *in absentia* before *Niz-Chavez*—who has not yet filed a motion to reopen—will be entitled to reopen his case and apply for rescission of removal. In all of these cases, the government will have to start all over again—all for sending notice (which the alien did receive) in two documents instead of one.[1] It is

---

[1] For context, between 2017 and 2020, the government issued 41,969, 46,116, 90,944, and 87,002 *in absentia* removal orders each year. EOIR, Adjudication Statistics: In Absentia Removal Orders (2020), https://www.justice.gov/eoir/page/file/1243496/download.

not clear that the law requires these consequences, and this court should not have accepted them unblinkingly.

## I.

Petitioner Marcelo Eugenio Rodriguez, a native and citizen of Uruguay, became removable from the United States when his conditional permanent resident status was terminated in 2016. *Rodriguez v. Garland*, 15 F.4th 351, 353 (5th Cir. 2021). Two years later, DHS sent Rodriguez a notice to appear that did not include the time and place of his removal proceeding. *Id.* This information, however, was provided in a subsequent notice of hearing sent to Rodriguez at his Pasadena, Texas, address. *Id.*

Rodriguez failed to appear at his removal hearing and was ordered removed *in absentia. Id.* He filed a motion to reopen his case, arguing that: (1) he did not receive notice of his hearing because he had since moved from his Pasadena address; (2) he had informed the immigration court—as required—of his new address; and (3) the separate and subsequent notice of hearing did not satisfy the notice requirements for removal *in absentia*.

Noting that the record did not contain a change-of-address form, the IJ held that Rodriguez failed to show that he did not receive the notice of hearing sent to his Pasadena address. After determining that a subsequent notice of hearing is sufficient notice to preclude reopening of removal proceedings, the IJ denied Rodriguez's requested relief. The BIA agreed, and Rodriguez filed a petition for review.

After briefing in this court had concluded, the Supreme Court issued its decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). Relying on the fact that "notice to appear" is preceded by the article "a" in both § 1229b(d)(1) and § 1229(a), the Court held that the stop-time rule does not

preclude cancellation of removal unless the alien receives all of the information in § 1229(a)(1) in a single document. *Id.* at 1486.

Applying *Niz-Chavez*, the panel opinion declined the government's invitation to either address or remand for clarification of whether Rodriguez updated his address and was therefore entitled to notice at all. Instead, the panel leapfrogged over this threshold issue and landed straight onto an unbriefed and unargued question of first impression: Whether an alien is entitled to reopen his *in absentia* removal order and apply for rescission of removal when he receives notice of his removal proceedings in two documents instead of one.[2] Absent briefing on *Niz-Chavez* and without the

---

[2] This is indeed a threshold issue. *But see ante* at 5 n.6 (Duncan, J., concurring). Section 1229(a)(1)(F)(ii) requires aliens to "provide the Attorney General immediately with a written record of any change of the alien's address or telephone number." 8 U.S.C. § 1229(a)(1)(F)(ii). Section 1229a(b)(5)(B) provides the consequences for failing to do so: "No written notice shall be required under subparagraph (A) if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." *Id.* § 1229a(b)(5)(B); *see also id.* § 1229(a)(2)(B) (stating the same). It is undisputed that Rodriguez's notice to appear instructed him to update the immigration court with any address changes. And under the government's account, Rodriguez moved from his Pasadena address (to which the subsequent notice of hearing was sent) without updating the immigration court with his new address.

Because Rodriguez disputes the government's account, it is unclear whether Rodriguez is entitled to notice at all. Nothing in § 1229(a) conditions the updated-address requirement on the receipt of a notice to appear that includes the time and place of removal proceedings. And, as our precedents demonstrate, this requirement is relevant to the presumption of effective service because it is a condition precedent to rebutting it. While an alien may attempt to rebut the presumption of receipt by showing that notice was sent to an old address, the presumption will only be overcome if the alien updated his address and is therefore entitled to notice in the first place. *See, e.g.*, *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 149 (5th Cir. 2018) ("Even if Mauricio-Benitez had been entitled to actual notice of his removal hearing, we agree with the BIA's determination that he has not presented sufficient evidence to rebut the presumption that the NOH was properly delivered."). This is plain from the statute's text, and the concurrence's reading—though not part of the holding in this case—would apparently discharge all aliens affected by *Niz-Chavez* of their responsibility to update their addresses. In any event, the concurrence's

benefit of oral argument, the panel summarily concluded that *Niz-Chavez* dictates the answer in this different statutory and immigration context.[3]

A few months later, the BIA disagreed with the panel opinion in a precedential decision, *Matter of Laparra*, 28 I. & N. Dec. 425 (BIA 2022). After surveying the statutory text, context, and history, the BIA distinguished *Niz-Chavez* on three grounds. First, it recognized that § 1229a(b)(5)(C)(ii) does not introduce "notice to appear" with the article "a," the word on which "a lot [turned]" in *Niz-Chavez*. 141 S. Ct. at 1480; *Matter of Laparra*, 28 I. & N. Dec. at 431. Second, it interpreted the disjunctive "or" in § 1229a(b)(5)(C)(ii) to signify that notice under § 1229(a)(2) may be satisfied independently of § 1229(a)(1), such as by a subsequent notice of hearing. *Matter of Laparra*, 28 I. & N. Dec. at 436. And third, it explained that its decision was consistent with the "place[ment] of sections 240(b)(5)(A) and (C)(ii) in the overall statutory scheme as well as the relevant regulatory history." *Id.* at 434.

## II.

This case is not about when immigration proceedings start, but we must begin there nonetheless. Title 8 U.S.C. § 1229 describes the initiation of removal proceedings. Section 1229(a), titled "Notice to appear," requires

---

novel argument that *Niz-Chavez* "moot[s]" the updated-address requirement is yet another reason both for deciding this case on more than 28(j)s initially and for rehearing it *en banc* now.

[3] Specifically, the parties filed letters under Federal Rule of Appellate Procedure 28(j) informing the court of the Supreme Court's decision in *Niz-Chavez*. Fed. R. App. P. 28(j). This was entirely appropriate. But 28(j)s are "letter[s]," capped at 350 words, meant only to bring "intervening decisions or new developments" to the court's attention. *Id.*; 5th Cir. R. 28.4. They are not "supplemental brief[s]" and may not be used to make arguments. 5th Cir. R. 28.4. Thus, 28(j)s are poor substitutes for supplemental briefing, which the court may—and often does—request.

"written notice (in this section referred to as a 'notice to appear') [to] be given" to the alien specifying a litany of information, including (among other things) the: (1) nature of the removal proceedings and their legal authority; (2) charges against the alien and the relevant illegal conduct; and (3) time and place of the removal proceedings and the consequences for failing to appear. *Id.* § 1229(a)(1). After providing this information, § 1229(a)(2) requires the government to send a new document with the time and place of the alien's removal proceedings and the consequences for failure to appear when the immigration court changes or postpones the alien's removal proceedings. *Id.* § 1229(a)(2).

Since the Illegal Immigration Reform and Immigrant Responsibility Act was enacted in 1996 and until the Court's decision in *Niz-Chavez*, most aliens received notice of their immigration proceedings in two stages.[4] First, the government (now specifically DHS) would send the alien a notice to appear. This notice to appear would generally include all of the information described by § 1229(a)(1) except for the time and place of the alien's removal proceeding. For various administrative reasons, the immigration court would later send a separate document—a notice of hearing—with the time and date of the alien's hearing and the consequences of failing to appear after processing the alien's information and scheduling his hearing.

Under our still-applicable precedents, which the panel opinion does not disturb, the receipt of this notice to appear vests the immigration court with jurisdiction over the alien's case. *E.g.*, *Pierre-Paul v. Barr*, 930 F.3d 684,

---

[4] *E.g.*, *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018) (quoting the government's statement that nearly 100 percent of notices to appear have omitted the time and place of the proceeding over the last three years).

690 (5th Cir. 2019). As this court has explained, "the regulations . . . govern what a notice to appear must contain to constitute a valid charging document," and under the regulations a notice to appear must only include the time and place of removal proceedings "where practicable." *Id.* at 688–90, 693; *see also* 8 C.F.R. §§ 1003.14, 1003.15, 1003.18, 1003.26. Accordingly, a notice to appear has never been required—either by regulation or our case law—to include all of the information described by § 1229(a)(1) before initiating removal proceedings.

After removal proceedings are initiated, a provision of IIRIRA allows the Attorney General to cancel removal proceedings under certain circumstances. Under one of them, the Attorney General may cancel the removal of aliens who have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). A companion provision defines when this 10-year clock stops running. It specifies that "any period of continuous residence or continuous physical presence" ends "when the alien is served a notice to appear under section 1229(a)." *Id.* § 1229b(d)(1). This rule, known as the stop-time rule, was the subject of the Court's decision in *Niz-Chavez*.

In *Niz-Chavez*, the Supreme Court held that the stop-time rule is not triggered until the alien receives all of the information described in § 1229(a)(1) in a single document. *Niz-Chavez*, 141 S. Ct. at 1486. In other words, the stop-time rule does not preclude an alien's eligibility for cancellation unless the time and place of his removal proceeding are included in the notice to appear. But this case is about reopening, not cancellation, of removal. It therefore implicates statutory text, context, and objectives that are different from those present in *Niz-Chavez*.

III.

"[C]ancellation and reopening of removal are two entirely different proceedings under immigration law[.]" *Mauricio-Benitez v. Sessions*, 908 F.3d 144, 148 n.1 (5th Cir. 2018). Cancellation of removal terminates ongoing proceedings. Reopening of removal restarts proceedings that have concluded. These two different proceedings use different statutory text to serve different objectives. These textual and contextual differences counsel against a cursory, one-to-one application of *Niz-Chavez* to this distinct context.

More specifically—and differently—this case is about reopening *in absentia* orders of removal. An alien may be removed *in absentia* if he fails to appear at his removal proceeding. Title 8 U.S.C. § 1229a(b)(5)(C)(ii) governs the reopening and rescission of *in absentia* removal orders. It states that an *in absentia* order of removal may be rescinded "upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)." *Id.* § 1229a(b)(5)(C)(ii). Put differently, reopening is *not* permitted where the alien receives notice in accordance with either § 1229(a)(1) or (a)(2).

Notably, it is undisputed that an alien already may show that he did not actually receive notice of his hearing. This court applies a presumption of receipt to notice sent by mail. *E.g.*, *Navarrete-Lopez v. Barr*, 919 F.3d 951, 953–54 (5th Cir. 2019). "[T]he focus is whether the alien actually received the required notice and not whether the notice was properly mailed," and an alien who successfully rebuts the presumption of receipt is entitled to reopen his case and apply for recission of his *in absentia* order. *See id.* (quoting *Garcia-Nuñez v. Sessions*, 882 F.3d 499, 506 (5th Cir. 2018)); 8 U.S.C. § 1229a(b)(5)(C)(ii). As a result, an alien will remain subject to an *in absentia*

14

order only when he actually received notice of his removal proceeding and failed to appear nonetheless.[5]

Against this backdrop, it would seem odd to conclude that an alien, despite knowing about his removal proceeding and consciously failing to appear, is eligible for reopening and rescission of his removal order simply because he received notice of his hearing in two documents instead of one. And indeed, there are good reasons to think that he is not.

First, it is not clear that *Niz-Chavez* compels this result. *Niz-Chavez* interpreted statutory language unique to that case. Its holding rested evenly on both statutory provisions at issue: § 1229b(d)(1) and § 1229(a)(1). *Niz-Chavez*, 141 S. Ct. at 1480–82. "[O]ur interpretive task," the Court said, "begins with two statutory provisions": § 1229b(d)(1) and § 1229(a)(1). *Id.* at 1480.

The first, the stop-time rule, requires "a" notice to appear. *Id.* Thus, "[t]o an ordinary reader—both in 1996 and today—'a' notice would seem to suggest just that: 'a' single document." *Id.* And the second, § 1229(a)(1), also uses the singular article "a." *Id.* After concluding that the dissent improperly overlooked the "a's" falling outside the defined term, the Court further dismissed the dissent's position about § 1229(a)(1) because it did not "help when it comes to § 1229b(d)(1), the provision that actually creates the stop-time rule." *Id.* at 1480–81. "Not once but twice it seems Congress contemplated 'a' single document." *Id.* at 1481.

The Court's interpretive task appeared to end with both provisions as well. The critical question was whether § 1229b(d)(1), the *referencing* statute,

---

[5] Separate provisions oblige the alien to apprise the immigration court of any changes to the alien's address. 8 U.S.C. § 1229(a)(2)(B); *id.* § 1229a(b)(5)(B).

requires a single document. The Court expressly stated as much when considering the result if an article did not precede "notice" in § 1229b(d)(1):

> If IIRIRA had meant to endow the government with the flexibility it supposes, we would have expected the law [*i.e.*, the stop-time rule] to use "notice" in its noncountable sense. A statute like that would have said the stop-time rule applies after the government provides "notice" (or perhaps "sufficient notice") of the mandated information—indicating an indifference about whether notice should come all at once or by installment.

*Id.* at 1481 (alteration added).

This case appears to be the Court's counterfactual. The referencing statute here does not use the indefinite article "a," 8 U.S.C. § 1229a(b)(5)(C)(ii); rescission of an *in absentia* removal order is available if the alien does not receive "notice." *Id.* As in the counterfactual, the lack of an article "indicat[es] an indifference about whether notice should come all at once or by installment." *See Niz-Chavez*, 141 S. Ct. at 1481; *id.* at 1480 ("Admittedly, a lot here turns on a small word."). Justice Kavanaugh makes this very point in dissent. If the issue turns on whether an "a" appears in the referencing statute, then notice under § 1229a(b)(5) need not be provided in a single document. This might "make[] no sense," *id.* at 1491 (Kavanaugh, J., dissenting), but we are not required to remedy one inconsistency with another.[6]

Second, and independently, even assuming that Rodriguez did not receive notice "in accordance with paragraph (1)," the subsequent notice of

---

[6] This question turns on the content of the *referencing*, as opposed to the *referenced*, statute. Rather than rewriting the referenced statute anew every time, Congress may, as it has done here, cross-reference a statute and change only the referencing statute as necessary.

hearing might have satisfied "notice in accordance with paragraph . . . (2)." 8 U.S.C. § 1229a(b)(5)(C)(ii). Section 1229a(b)(5)(C)(ii) allows an alien to rescind an *in absentia* removal order if the alien "did not receive notice in accordance with paragraph (1) *or* (2) of section 1229(a)." *Id.* (emphasis added). Paragraph (2), § 1229(a)(2), requires the government to give an alien notice of "the new time or place of the proceedings" and the consequences of failing to appear when the government changes or postpones the time or place of his removal proceedings. *Id.* § 1229(a)(2)(A)(i), (ii).

The BIA recently disagreed with the panel's opinion on this basis. After surveying the statutory text, context, and history, it concluded that when an alien receives a notice to appear without the time and place of the proceeding and the consequences for failing to appear, his subsequent receipt of a notice of hearing with this information satisfies "notice in accordance with paragraph . . . (2)" and precludes reopening and rescission of his removal order. *Matter of Laparra*, 28 I. & N. Dec. 425, 431–36 (BIA 2022).

The BIA, as well as the government in this case, specifically faulted the panel for failing to even address this possibility. *Id.* at 436.[7] As the BIA has recognized elsewhere, § 1229a(b)(5)(C)(ii) "uses the disjunctive term 'or' rather than the conjunctive 'and,'" meaning that "an in absentia order of removal may be entered if a written notice containing the time and place of the hearing was provided *either* in a notice to appear under [§ 1229(a)(1)] *or* in a subsequent notice of the time and place of the hearing pursuant to [§ 1229(a)(2)]." *Matter of Miranda-Cordiero*, 27 I. & N. Dec. 551, 553 (BIA

---

[7] The panel opinion does not even quote the relevant language. *Compare Rodriguez v. Garland*, 15 F.4th 351, 354 (5th Cir. 2021) (stating that an alien must receive "notice in accordance with [8 U.S.C. § 1229(a)]" (quoting 8 U.S.C. § 1229a(b)(5)(C)(ii))) (alteration in original), *with* 8 U.S.C. § 1229a(b)(5)(C)(ii) (stating that an alien must receive "notice in accordance *with paragraph (1) or (2) of* section 1229(a)") (emphasis added).

2019); *see also Matter of Laparra*, 28 I. & N. Dec. at 436. As the BIA held and as the government argues here, this disjunctive "or" appears to indicate that only one provision may be satisfied—and, just as importantly—that each provision may be satisfied independently of the other.

This interpretation also makes sense of the differences between cancellation of removal and reopening. In the stop-time context, it might make sense to require a single document before terminating the alien's period of continuous residence or continuous physical presence. 8 U.S.C. § 1229b(d)(1). There, it matters that an alien has notice of a discrete point in time that triggers important legal consequences. Reopening, however, cares less about any one discrete moment in time and more about the alien's failure to appear despite knowing that he should. An alien has certain and sufficient notice of an impending notice of hearing when he has received a notice to appear stating: (1) the nature of the proceedings against him; (2) the legal authority under which the proceedings are conducted; (3) the acts or conduct alleged to be in violation of law; (4) the charges against the alien and the relevant statutory provisions; (5) notice that the alien may be represented by counsel; (6) the address of the immigration court; and (7) a statement that the alien must provide his address and telephone number. 8 C.F.R. § 1003.15(b). And when the alien receives the notice of hearing and still fails to appear, he may be removed *in absentia* for failing to appear despite knowing that he should. 8 U.S.C. § 1229a(b)(5)(A). Without the benefit of briefing and oral argument, it is unclear why reopening here should hinge on the form of the alien's notice and not the alien's notice as such.[8]

---

[8] It would not be surprising for Congress to require aliens to meet different standards for cancellation and reopening of removal. Reopening of removal implicates

Finally, we may also owe deference to the BIA's decision. This court grants deference to precedential BIA decisions that reasonably interpret ambiguous statutes. *E.g.*, *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 449 (5th Cir. 2015) ("If we determine that the BIA decision is precedential, then we proceed under the *Chevron* two-part inquiry[.]") (footnote omitted). To say that the panel opinion is correct is one thing. To say that it is *unambiguously correct* is another; not even the panel opinion says so. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005) ("[A] court's prior interpretation of a statute [may] override an agency's interpretation only if the relevant court decision held the statute unambiguous.").

\*　　\*　　\*

The court should have granted rehearing *en banc* to consider the panel's decision more carefully. I respectfully dissent from its refusal to do so.

---

substantial finality interests, interests not at stake where an alien merely seeks cancellation of proceedings that are yet ongoing.

James C. Ho, *Circuit Judge*, dissenting from denial of rehearing en banc:

Under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and other precedents, courts are often required to defer to Executive Branch interpretations of statutes, rather than exercise our own independent judgment about the meaning of legal texts. This doctrine of deference has been sharply criticized as a violation of our constitutional structure and an abdication of our duty as a separate and independent branch of government. *See*, *e.g.*, *Voices for Int'l Bus. & Educ., Inc. v. NLRB*, 905 F.3d 770, 780–81 (5th Cir. 2018) (Ho, J., concurring) ("[I]t is the consolidation of legislative and judicial power in executive agencies that has caused *Chevron* to be called into question by various Justices.") (collecting cases).

But of course, "*Chevron* remains binding Supreme Court precedent." *Id.* at 780. Moreover, if ever there was a place for deference to the Executive when it comes to interpreting legal texts, it would be here, in the immigration and border security context.

A sovereign isn't a sovereign if it can't enforce its borders. The power to control the flow of aliens into our country is inherent in our national sovereignty—and in the executive power under our Constitution—as the Supreme Court has repeatedly recognized. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Ekiu v. United States*, 142 U.S. 651, 659 (1892). "The exclusion of aliens is a fundamental act of sovereignty." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950). And "[t]he right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *Id.* *See*, *e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2424 (2018) (Thomas, J.,

concurring) ("[T]he President has *inherent* authority to exclude aliens from the country.") (citing *Knauff*, 338 U.S. at 542–43).

So it seems obvious that, if nowhere else, "[p]rinciples of *Chevron* deference apply when the BIA interprets the immigration laws." *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 56 (2014) (plurality op.). "Indeed, judicial deference to the Executive Branch is especially appropriate in the immigration context, where decisions about a complex statutory scheme often implicate foreign relations." *Id.* at 56–57 (cleaned up).

The panel contends that its analysis in this case is dictated by governing statutory text, particularly as that text was recently construed by the Supreme Court in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021).

But the BIA has since adopted precisely the opposite reading of those same governing texts. *See Matter of Laparra*, 28 I. & N. Dec. 425, 431–36 (BIA 2022). As the BIA has explained, "an in absentia order of removal . . . need not be rescinded if a written notice containing the time and place of the hearing was provided *either* in a notice to appear under [8 U.S.C. § 1229(a)(1)] *or* in a subsequent notice of the time and place of the hearing pursuant to [8 U.S.C. § 1229(a)(2)]." *Id.* at 432 (quotations omitted). *See* 8 U.S.C. § 1229a(b)(5)(C)(ii) (allowing aliens to rescind an in absentia removal order if they "did not receive notice in accordance with paragraph (1) *or* (2) of section 1229(a)") (emphasis added).

To be sure, "paragraph (2) [in § 1229(a)] presumes that the Government has already served a 'notice to appear under section 1229(a)' that specified [the requisite] time and place." *Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018). But the BIA reasoned that the text of § 1229a(b)(5)(C)(ii)—and in particular, the disjunctive "or"—modifies the meaning of § 1229(a) in this context. As a result, § 1229(a)(1) and § 1229(a)(2) can be satisfied independently of one another for purposes of

rescinding in absentia removal orders. *See Laparra*, 28 I. & N. Dec. at 431–36.

I cannot say that the BIA's position is unreasonable. To the contrary, if the Supreme Court is going to place such great weight on the word "a," as it did in *Niz-Chavez*, who's to say that the BIA may not similarly place such great weight on the word "or," as it has in this context?

The panel did not address the BIA's decision in *Laparra*, or whether that decision is entitled to deference. That's because, at the time of the panel's decision, the BIA had not yet set forth its views. In fact, the BIA's ruling in the instant case occurred even before the Supreme Court's decision in *Niz-Chavez*. So the panel ruling in this case obviously would not bind a future panel on the question whether deference to *Laparra* is required in these contexts.

Nevertheless, if it were up to me, I would remand this case to allow the BIA to address all of these issues in the first instance—including the impact of *Laparra* as well as *Niz-Chavez* on these proceedings—consistent with our traditional understanding of national sovereignty and deference to the Executive Branch on matters of border enforcement and the exclusion of aliens. It is for that reason that I dissent from the denial of rehearing en banc.