# United States Court of Appeals
## For the First Circuit

No. 22-1081

SERGIO RODOLFO LAPARRA-DELEON,

Petitioner,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Lidia M. Sanchez, for petitioner.
Kristin Macleod-Ball and Trina Realmuto on brief for National
Immigration Litigation Alliance, Political Asylum/Immigration
Representation Project, American Immigration Lawyers Association,
and American Immigration Council, amici curiae.
Elizabeth K. Fitzgerald-Sambou, Senior Litigation Counsel,
Office of Immigration Litigation, U.S. Department of Justice, with
whom Brian M. Boynton, Principal Deputy, Assistant Attorney
General, Civil Division, and John W. Blakeley, Assistant Director,
Office of Immigration Litigation, were on brief, for respondent.

November 4, 2022

BARRON, **Chief Judge**.  Sergio Rodolfo Laparra-Deleon, a native and citizen of Guatemala, petitions for review of a decision by the Board of Immigration Appeals ("BIA") that denied his motion to reopen and terminate his removal proceedings, or, in the alternative, to reopen and rescind the in absentia removal order against him.  We deny the petition as to the motion to reopen to terminate the removal proceedings but grant the petition and vacate the BIA's ruling as to the motion to reopen and rescind the removal order.

## I.

Laparra-Deleon entered the United States without inspection in or around January 2002.  More than six years later, in July 2008, he was served with a document from the U.S. Department of Homeland Security ("DHS").  The document charged him with removability under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and ordered him "to appear before an immigration judge" for his removal proceedings in Boston, Massachusetts "on a date to be set at a time to be set."

Nearly two years later, the Immigration Court in Boston sent Laparra-Deleon another document.  This document informed him that the removal proceedings "ha[d] been scheduled for a MASTER hearing before the Immigration Court on Apr[il] 8, 2010 at 1:30 P.M." in Boston.  The document was returned as undeliverable to the Immigration Court.

Laparra-Deleon did not appear at the "hearing" referred to in the document from the Immigration Court. For that reason, he was ordered removed in absentia pursuant to 8 U.S.C. § 1229a(b)(5)(A). That measure provides, in relevant part:

> [a]ny alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien or the alien's counsel of record, does not attend a proceeding under this section, shall be ordered removed in absentia if the [INS] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable . . . .
> 8 U.S.C. § 1229a(b)(5)(A).

Paragraph (1) of § 1229(a) states that "written notice (in this section referred to as a 'notice to appear') shall be given . . . to the alien [in removal proceedings] . . . specifying . . . [t]he time and place at which the proceedings will be held." Paragraph (2) of § 1229(a) states, under the heading "[n]otice of change in time or place of proceedings," that "[i]n removal proceedings under section 1229a of this title, in the case of any change or postponement in the time and place of such proceedings . . . a written notice shall be given . . . to the alien . . . specifying . . . the new time or place of the proceedings."

The petition for review before us here challenges Laparra-Deleon's order of removal in absentia based on the way

- 3 -

that the Supreme Court's decisions in Pereira v. Sessions, 138 S. Ct. 2105 (2018), and Niz-Chavez v. Garland, 141 S. Ct. 1474 (2021), construe § 1229(a).  Unlike the case before us, in which the meaning of § 1229(a) is implicated because it is referenced by the in absentia removal provisions § 1229a(b)(5)(A) and § 1229a(b)(5)(C)(ii), Pereira and Niz-Chavez interpreted § 1229(a) only while addressing 8 U.S.C. § 1229b(d)(1), which sets forth what is known as the "stop-time rule" for cancellation of removal.

The "stop-time" rule matters because, to be eligible for cancellation of removal, a noncitizen must have resided or been physically present in the United States for a certain period.  See 8 U.S.C. § 1229b(a)(2) & (b)(1)(A).  Section 1229b(d)(1), in setting forth the "stop-time rule," determines when the period ends by keying the end of that period to "when the alien is served a notice to appear under section 1229(a) of this title."

Pereira and Niz-Chavez each concerned whether a noncitizen had received the "notice to appear" to which § 1229b(d)(1) refers, such that the "stop-time rule" had been triggered.  See Pereira, 138 S. Ct. at 2110; Niz-Chavez, 141 S. Ct. at 1479.  They each addressed that issue by determining what constitutes a "notice to appear" under § 1229(a)(1), as the noncitizen in each case contended that, because he had not received a "notice to appear" under § 1229(a)(1), the "stop-time rule" had not been triggered and thus the noncitizen was eligible for

- 4 -

cancellation of removal despite the government's contrary contention. See Pereira, 138 S. Ct. at 2112; Niz-Chavez, 141 S. Ct. at 1479.

Pereira came first and addressed whether a document that DHS served on a noncitizen that charged the noncitizen with removability constitutes a "notice to appear" if it provides only that the date and time of day of the noncitizen's removal proceedings are "to be set." Pereira, 138 S. Ct. at 2113-15. Pereira holds that such a document does not constitute a "notice to appear" under § 1229(a)(1) because § 1229(a)(1) makes clear that a "notice to appear" must contain the "time" of a noncitizen's removal proceedings, and without setting the date or time of day of the proceedings, the document served by DHS in Pereira failed to contain the "time" of such proceedings. Id. For that reason, Pereira holds that such a document does not in and of itself trigger the "stop-time rule" and end a noncitizen's period of continuous residence or physical presence under § 1229b(d)(1). Id.

Niz-Chavez came next and addressed a question that Pereira had left open. There, the noncitizen had been served with a document that charged him with removability but did not itself constitute a "notice to appear" under § 1229(a)(1) because it did not include the "time" of his hearing, as required by § 1229(a)(1). Niz-Chavez, 141 S. Ct. at 1479. However, "the government"

thereafter sent the noncitizen a document that provided the "time" of the noncitizen's removal proceedings. Id. The question before the Court in Niz-Chavez, therefore, was whether those two documents together constituted a "notice to appear" under § 1229(a)(1) and so triggered the "stop-time" rule, even though neither document on its own did. Id.

The Court held that the two documents together did not constitute a "notice to appear" under § 1229(a)(1). Id. at 1485. The Court explained that the text of § 1229b(d)(1) and § 1229(a)(1) make clear that a "notice to appear" under § 1229(a)(1) must be "a single compliant document explaining what [the government] intends to do and when" rather than multiple documents that together explain as much. Id.

Based on those two rulings, Laparra-Deleon filed a motion to reopen in 2021 with the BIA with respect to his order of removal in absentia. The petition for review that is before us here arises from the BIA's denial in 2022 of that motion to reopen, which had followed earlier related motions that Laparra-Deleon had filed either to terminate his removal proceedings or, in the alternative, to vacate his removal in absentia order but that had been denied by the Immigration Judge and the BIA.

In the 2021 motion filed by Laparra-Deleon with the BIA out of which the present petition for review arises, Laparra-Deleon relied on Pereira and Niz-Chavez in part to support his

- 6 -

request to reopen to terminate his removal proceedings on the ground that the Immigration Court did not have jurisdiction over those proceedings. He argued in the motion that, under 8 C.F.R. § 1003.14(a), jurisdiction vests for removal proceedings only if the noncitizen subject to them has been served a "charging document." He then further argued that he had not been served such a document because the document that DHS served on him that charged him with removability, though titled a "Notice to Appear," did not set forth the "time" for the removal proceedings as Pereira and Niz-Chavez had each held that a single document must for that document to qualify as a "notice to appear" under § 1229(a)(1). The BIA rejected Laparra-Deleon's jurisdiction-based contention by relying on BIA precedents that had held that jurisdiction vests over a noncitizen's removal proceedings under the relevant regulation even if the noncitizen was not served with a "notice to appear" within the meaning of § 1229(a)(1). See Matter of Laparra-Deleon, 28 I. & N. Dec. 425, 430 (B.I.A. 2021) (citing Matter of Arambula-Bravo, 28 I. & N. Dec. 388, 390-92 (B.I.A. 2021)).

Laparra-Deleon also relied on Pereira and Niz-Chavez in his motion to the BIA, however, to request in the alternative that the BIA reopen and rescind his order of removal in absentia, even if jurisdiction had vested over the removal proceedings by virtue of the combination of documents that he had received from DHS and the Immigration Court. In pressing this contention, Laparra-

- 7 -

Deleon trained his focus on § 1229a(b)(5)(A), which, as we noted above, provides that a noncitizen must be ordered removed in absentia for failing to attend removal proceedings "after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the" noncitizen or the noncitizen's counsel, and § 1229a(b)(5)(C)(ii), which provides that an order of removal in absentia may be rescinded upon a timely motion to reopen by the noncitizen only if the noncitizen "demonstrates that [the noncitizen] did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)."

Laparra-Deleon asserted that, given Pereira and Niz-Chavez, he had not been served a "notice to appear" under § 1229(a)(1), and thus had not received "written notice" under "paragraph (1) . . . of section 1229(a)." See § 1229a(b)(5)(A). He then further contended that the document that the Immigration Court sent to him also did not constitute "written notice required under paragraph . . . (2) of section 1229(a)," see § 1229a(b)(5)(A), because it did not provide "written notice" to him of "any change" in the "time" of his removal proceedings. See § 1229(a)(2). And that was so, he contended, because the document sent to him by the Immigration Court itself set the date and time of day for his removal proceedings where none had previously existed -- and thus initially set the "time" for the proceedings within the meaning of § 1229(a) -- rather than "chang[ing]" the

"time" of those proceedings. See id. Accordingly, Laparra-Deleon contended that he had demonstrated that he had not received "notice in accordance with paragraph (1) or (2) of section 1229(a)." See § 1229a(b)(5)(C)(ii).

The BIA ruled otherwise. See Matter of Laparra-Deleon, 28 I. & N. Dec. 425. The BIA held that because § 1229a(b)(5)(A) and § 1229a(b)(5)(C)(ii) -- neither of which Pereira or Niz-Chavez interpreted -- each uses the disjunctive phrase "paragraph (1) or (2)," those provisions make clear that a noncitizen need only have received the notice referred to in one of the two paragraphs to be subject to removal in absentia for failing to attend the noncitizen's removal proceedings. Id. at 432. The BIA then further concluded that the document from the Immigration Court did notify Laparra-Deleon of a "change" in the "time" of his proceedings, and so constituted "written notice" under paragraph (2). Id. at 434. Accordingly, the BIA held that Laparra-Deleon was properly ordered removed in absentia for having failed to appear at his removal proceedings. Id. at 436.

Laparra-Deleon now petitions for review of the BIA decision.

**II.**

We begin with Laparra-Deleon's challenge to the BIA's denial of his motion to reopen to terminate his removal proceedings. As we have explained, Laparra-Deleon argued to the

- 9 -

BIA in that motion that he was entitled to termination of his removal proceedings in part because the Immigration Court lacked jurisdiction over such proceedings. And, as we also have explained, the BIA denied Laparra-Deleon's motion to reopen to terminate by rejecting this jurisdictional argument.

The government argues that Laparra-Deleon has waived the jurisdictional argument to us because he failed to raise it in his petition for review. But, we understand Laparra-Deleon in challenging the BIA's denial of his motion to reopen to terminate his removal proceedings in his petition for review to be challenging the BIA's jurisdictional ruling. Nonetheless, we have held that there is no jurisdictional bar to removal proceedings in a case like this one. See Goncalves Pontes v. Barr, 938 F.3d 1, 7 (1st Cir. 2019). Accordingly, we deny Laparra-Deleon's petition for review insofar as it takes aim at the BIA's denial of his motion to reopen to terminate his removal proceedings.

### III.

Laparra-Deleon also challenges the BIA's denial of his motion in the alternative to reopen and rescind his removal order in absentia. In that challenge, he contends, as he did in the underlying motion to the BIA, that neither the document that charged him with removability that DHS served on him nor the subsequent document that the Immigration Court sent to him that informed him of the date and time of day of his removal proceedings

- 10 -

constituted the "written notice" that is "required under paragraph (1) or (2) of section 1229(a)" in order for him to be removed pursuant to § 1229a(b)(5)(A), and he can therefore "demonstrate[]" that he did not receive "notice in accordance with paragraph (1) or (2) of section 1229(a)," as required for his order to be rescinded upon a motion to reopen filed under § 1229a(b)(5)(C)(ii). We agree.

We review the BIA's denial of the motion to reopen for abuse of discretion. See Xin Qiang Liu v. Lynch, 802 F.3d 69, 74 (1st Cir. 2015). Here, as we have explained above, the BIA's denial of the motion turns entirely on the BIA's interpretation of what constitutes "notice" under paragraph (2), which is a purely legal question that we review de novo. See Adeyanju v. Garland, 27 F.4th 25, 38 (1st Cir. 2022).

To determine whether the BIA permissibly construed this key phrase in concluding that Laparra-Deleon did receive the requisite notice to be ordered removed in absentia for failing to appear at his removal proceedings, we apply the two-step test set forth in Chevron, U.S.A, Inc., v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). Under step one, we must determine whether Congress spoke clearly to the precise question before us. Id. at 842. If so, that is "the end of the matter." Id. If not, then we move to step two, where we defer to

- 11 -

the BIA's interpretation of the statutory provision if it is reasonable. Id. at 843.

To be "written notice required under paragraph . . . (2)," see § 1229a(b)(5)(A), the document from the Immigration Court must have been "given" to Laparra-Deleon "in the case of any change or postponement in the time" of his removal proceedings. See § 1229(a)(2). That document clearly did not constitute "written notice" that was "given" to Laparra-Deleon "in the case of any . . . postponement" of the "time" of his removal proceedings; no "time" had been set for the proceedings prior to that document having been "given" to Laparra-Deleon and so no "postponement" of the "time" could have occurred. See id. So, that leaves only the question of whether the document constituted "written notice" that was "given" to Laparra-Deleon in the case of "any change" in the "time" of the removal proceedings within the meaning of § 1229(a)(2).

The BIA concluded that the document did constitute such "written notice." See Matter of Laparra-Deleon, 28 I. & N. Dec. at 434. But, in light of how Pereira construes the relevant words in § 1229(a)(2), we cannot agree. We note that this conclusion accords with two of our sister circuits. See Singh v. Garland, 24 F.4th 1315, 1317 (9th Cir. 2022), reh'g en banc denied, 51 F.4th 371 (9th Cir. 2022); Rodriguez v. Garland, 15 F.4th 351, 355-56

- 12 -

(5th Cir. 2021), reh'g en banc denied, 31 F.4th 935 (5th Cir. 2022).

> Pereira explains that:

> [b]y allowing for a "change or postponement" of the proceedings to a "new time or place," paragraph (2) presumes that the Government has already served a "notice to appear under section 1229(a)" that specified a time and place as required by § 1229(a)(1)(G)(i). Otherwise, there would be no time or place to "change or postpon[e]."

138 S. Ct. at 2114 (alteration in original) (emphasis added) (quoting 8 U.S.C. § 1229(a)(2)). By concluding that "there would be no time or place to 'change or postpon[e]'" unless a "notice to appear" under § 1229(a)(1) itself had set such a "time[,]" Pereira necessarily reads "change" in § 1229(a)(2) to refer to "the substitution of one thing for another" or "the succession of one thing in place of another," 3 Oxford English Dictionary, 15 (2d ed. 1989); see also change of venue, Black's Law Dictionary, (11th ed. 2019) ("[t]he transfer of a case from a court in one locale to another..."); change order, Black's Law Dictionary, (11th ed. 2019)("[a] modification of a previously ordered item or service"); cf. Villarreal v. R.J. Reynolds Tobacco Co., 839 F.3d 958, 977 (11th Cir. 2016) (en banc) (Rosenbaum, J., concurring in part and dissenting in part) (explaining that "to change something, it must exist in the first place"), rather than to refer to the initial establishment of something that did not previously exist. Indeed,

if that were not so, then § 1229(a)(2), by referring to a "change" in the "time" of the proceedings, would provide no support for Pereira's holding that a document that does not itself provide the "time" of the removal proceedings does not constitute a "notice to appear" under § 1229(a)(1).    Yet, Pereira plainly concluded otherwise in pointing to § 1229(a)(2) to support its conclusion about what constitutes a "notice to appear" under § 1229(a)(1).

Notably, the BIA does not address this passage from Pereira.  It thus fails to explain how, given Pereira's reasoning, the "change" in the "time" of the removal proceedings that is referred to in § 1229(a)(2) may be read as the BIA necessarily reads it here: to refer not only to the provision of a different "time" from that previously provided for the removal proceedings but also to the initial provision of a "time" for those proceedings.  And while the government does refer to the passage, it does not explain how "change" in § 1229(a)(2) may be read to mean two different things at one and the same time, which of course that word may not.  For the same reason, we also find unpersuasive the Sixth Circuit's ruling in Santos-Santos v. Barr, which comes to the same conclusion as the BIA does here -- albeit without the benefit of Niz-Chavez.  See 917 F.3d 486, 491-92 (6th Cir. 2019).  The Sixth Circuit, like the BIA, does not address the critical passage from Pereira construing § 1229(a)(2), and so does not

- 14 -

explain how the ruling that it reaches is consistent with Pereira. See id. at 489-91.

The BIA does emphasize that § 1229b(d)(1) uses the disjunctive "or" in referring to "paragraph (1) or (2)," and that the "provisions discussed in Niz-Chavez [and Pereira]" including the stop-time rule provision and § 1229(a) itself, do not use such language, so the Court has not had occasion yet to construe the phrase that contains the disjunctive. The government emphasizes this point, too. And, one other circuit has agreed with the BIA's reasoning here about the import of the disjunctive. See Dacostagomez-Aguilar v. U.S. Att'y Gen., 40 F.4th 1312, 1317 (11th Cir. 2022) (holding that the use of "or" in the statute indicates that "only one form of notice is required to render an in absentia removal lawful").

But, the fact that Congress chose to use the disjunctive "or" in § 1229a(b)(5)(A) and § 1229a(b)(5)(C)(ii) provides no basis for us to disregard Pereira's construction of § 1229(a)(2) itself. Nor does the reading of § 1229(a)(2) that we conclude Pereira requires strip the word "or" in § 1229a(b)(5)(A) and § 1229a(b)(5)(C)(ii) -- let alone the text that follows it -- of any function. The phrase "paragraph (1) or (2)" in § 1229a(b)(5)(A) and § 1229a(b)(5)(C)(ii) usefully makes clear that noncitizens will be subject to removal in absentia for failing to attend removal proceedings that are held at the "time or place"

- 15 -

set forth in a "notice to appear" under § 1229(a)(1) or removal proceedings held at a "new time or place" given to the noncitizen in the case of "any change or postponement" to the "time or place" that was mentioned in the "notice to appear," under § 1229(a)(2). Thus, the relevant statutory text, by using "or," ensures that a noncitizen is not free to ignore the "written notice" required in the case of "any change or postponement" in the "time or place" of removal proceedings that the "notice to appear" under § 1229(a)(1) previously set forth.

The government, unlike the BIA itself, also makes a number of additional arguments for sustaining the BIA's ruling that rely on assertions about the relevant statutory text. But, even assuming that we may treat those arguments as ones that the BIA itself embraces, none of them provides a basis for upholding the BIA's ruling.

The government first points to dictionary definitions of "change" that it contends support the conclusion that "change" can be from nothing to something, and so need not be from something to something else. But, even if we were to assume that the dictionary definitions that the government invokes were supportive of its contention about what the word "change" could mean in some contexts, the government does not offer any basis for concluding

that, after Pereira, "change" in § 1229(a)(2) may be read as the government contends it may be read.[1]

The government next argues that the word "any" in the phrase "in the case of any change or postponement in the time and place of such proceedings," see § 1229(a)(2)(A) (emphasis added), requires us to read change "broadly" to refer to the initial setting of a "time." But, as we have explained, Pereira necessarily rejects a reading of the phrase "any change" that would encompass the initial setting of the "time" of a proceeding.

Finally, the government contends that the presence of the word "postponement" would be rendered superfluous unless "change" were read to include the initial setting of the "time" of

---

[1] We note that the government does not suggest that, under National Cable & Telecommunications Association v. Brand X Internet Services, 545 U.S. 967 (2005) [hereafter "Brand X"], the BIA is not bound by the Supreme Court's construction of § 1229(a)(2) in Pereira. And given the Court's understanding in Pereira that the text that it was construing was clear, as the Court did not purport to apply any deference to the agency's competing view despite the government's invocation of Chevron, we thus consider any argument for upholding the BIA's construction based on Brand X to have been waived. We do note that the government -- though not the BIA itself -- does make the somewhat related argument that the BIA is not bound by the Fifth Circuit's decision in Rodriguez, 15 F.4th 351, given that, insofar as the Fifth Circuit came to the same conclusion we do here about § 1229(a)(2), the Fifth Circuit did not state that its interpretation was the only permissible one. But, as we are bound by Pereira, what matters is whether the government offers any basis for concluding that under Brand X the BIA is free to construe § 1229(a)(2) differently from how Pereira construed that text with respect to what constitutes a "change" in the "time" of removal proceedings, and, as we have explained, the government makes no such argument based on Brand X.

removal proceedings. But, the government makes no attempt to explain how such a reading squares with the way Pereira necessarily reads "change," and Pereira aside, the claimed superfluity is illusory. After all, a "change" could be to the place of the proceedings and not only its time, which is not true of a "postponement." In addition, unlike a "postponement," a "change" in theory could move the time of a hearing previously set forth in the "notice to appear" to be earlier, rather than later, than the initial time.

In addition to the unpersuasive textual arguments just canvassed, the government also appeals to statutory purposes to support the BIA's ruling. But, here too, we are not convinced.

The government's first purpose-based contention is rooted in a claim that "[s]tatutory history" demonstrates Congress's intent to "restrict[] relief from in absentia orders of removal" in part by limiting "noncitizens' ability to reopen removal proceedings." The government's second purpose-based contention is that Congress did not want to prevent removal in absentia in cases when a noncitizen received information about the time and place of hearings and the consequences of failing to attend. See also Dacostagomez-Aguilar, 40 F.4th at 1318 (holding that the interpretation of paragraph (2) that Laparra-Deleon urges us to adopt would permit "relief after a perfectly noticed hearing

- 18 -

because an alien did not receive notice of an earlier hearing at which he was not ordered removed").

But, the Supreme Court rejected similarly purpose-based arguments against the reading that it concluded the text demanded in Pereira, and so we do not see how we may credit them here. See 138 S. Ct. at 2118-20. We note, too, that in Niz-Chavez the Court recognized that Congress may have wanted to ensure that noncitizens would not have to deal with "a mishmash of pieces with some assembly required." 141 S. Ct. at 1480.

The government's last attempt to support the BIA's ruling is not in fact a defense of the conclusion that the document from the Immigration Court constituted "written notice required under paragraph . . . (2) of section 1229(a)." See § 1229a(b)(5)(A). Rather, the argument is that, even if DHS failed to provide such notice, this failure constituted harmless error. In particular, the government contends that even if Laparra-Deleon was ordered removed in absentia despite not having received the "written notice required by paragraph (1) or (2) of section 1229(a)," see § 1229a(b)(5)(A), we must deny his petition because the failure to provide him the requisite "written notice" was harmless error because he was sent what the government contends was "actual notice" by virtue of the document that was mailed to him by the Immigration Court.

The government relies for this contention chiefly on Shinseki v. Sanders, 556 U.S. 396 (2009). But that case, which concerned a notice that must be provided under 38 U.S.C. § 5103(a) to veterans seeking to claim benefits, did not purport to identify the circumstances, if any, in which an order of removal in absentia may be issued even though the noncitizen subject to it did not receive the "written notice" specified in § 1229a(b)(5)(A), which is the statute that mandates the issuance of such a removal order and that is our concern here. See id. Moreover, in that case, the Court was clear that it was only invalidating a particular framework for evaluating harmless error that the Federal Circuit had imposed and that it was deciding no more than that. Id. at 411. To cinch the matter, the government did not make the harmless-error argument to the BIA that it now makes to us, nor did the BIA rely on harmless error as a ground for denying the motion to reopen that is at issue here. Thus, we agree with Laparra-Deleon that this argument, insofar as the government has not waived it by failing to raise it to the BIA, is best left to the BIA to address, along with any responses to it that Laparra-Deleon may make, on remand.

## IV.

For these reasons, the petition for review is denied in part, and granted in part, and the case is remanded for further proceedings consistent with this opinion.

- 20 -