**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2291
_____

EDIN DONELSY MADRID-MANCIA,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA
_____

On Petition for Review of a Decision of the
Board of Immigration Appeals
(Agency Case No. A206-643-376)
Immigration Judge: David Cheng
_____

Argued
January 25, 2023

Before: HARDIMAN, KRAUSE, and MATEY, *Circuit
Judges*.

(Filed: July 3, 2023)

Aleksandra N. Gontaryuk **[ARGUED]**
AG Law Firm
711 Jersey Avenue, Suite 202
New Brunswick, NJ 08901

Jill S. Westerberg
AG Law Firm
P.O. Box 10188
PMB 45115
Newark, NJ 07101
       *Counsel for Petitioner*

Merrick B. Garland
Spencer Shucard **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
       *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

**MATEY**, *Circuit Judge*.

Edin Donelsy Madrid-Mancia received a document labeled "Notice to Appear" from the Department of Homeland Security informing her that she faced removal, but it omitted

the date and time of her removal hearing. A harmless oversight, reasons the Department of Justice, because it sent Madrid-Mancia a second document (this one labeled "Notice of Hearing") years later providing the missing information. When Madrid-Mancia did not appear as directed, she was ordered removed in absentia. But Congress only allows a supplemental notice "in the case of any change or postponement in the time and place of [an alien's removal] proceedings." 8 U.S.C. § 1229(a)(2)(A). Here, no change or postponement occurred, and DHS never issued a new Notice to Appear, so we will grant Madrid-Mancia's petition and remand for the agency to rescind her removal order.

## I.

For some time, the Attorney General has informed aliens about upcoming removal proceedings using a two-step process. First, the alien receives a putative Notice to Appear ("NTA"), often on arrival, omitting information about the time or date of the removal hearing. Then, an immigration court housed within the Justice Department's Executive Office for Immigration Review mails the alien a "Notice of Hearing," often years later, announcing the removal hearing schedule. This patchwork process strays from the statute designed to control it. To understand how far it has wandered, we go back to where it began.

## A.

The practice of starting removal proceedings with an NTA began when Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, § 304(a)(3), 110 Stat. 3009-546, 3009-587. Under the Act, every NTA must

3

contain "[t]he time and place at which the [removal] proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). But this was not always so.

Before IIRIRA, removal (then called deportation) proceedings could begin only after an alien was "given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings [would] be held." Immigration and Nationality Act of 1952, Pub. L. No. 82-414, § 242(b)(1), 66 Stat. 163, 209. The Attorney General followed this directive, issuing regulations requiring an "order to show cause" containing the hearing's "time and place." 21 Fed. Reg. 97, 98–99 (Jan. 6, 1956) (codified at 8 C.F.R. § 242.1(b) (1957)).

But the Immigration and Naturalization Service eventually found that process too cumbersome, claiming it was often "not possible to hold the hearing as specified in the order to show cause." 43 Fed. Reg. 36,238, 36,238 (Aug. 16, 1978). So the Attorney General drafted a new rule relaxing the time-and-place requirement. This allowed the information to "be stated in the order [to show cause] or . . . *later specified*." *Id.* at 36,239 (codified at 8 C.F.R. § 242.1(b) (1979)) (emphasis added). Another regulation instructed immigration courts to provide the time-and-place information whenever it was omitted from the order to show cause. *See* 52 Fed. Reg. 2931, 2939 (Jan. 29, 1987) (codified at 8 C.F.R. § 242.1(b) (1988)). Together, these regulations are the blueprint for the two-step system the Justice Department used in this case: send a show cause order without time-and-place information, and count on an immigration court to provide it later.

Congress responded agreeably and codified these regulations in the Immigration Act of 1990, Pub. L. No. 101-

4

649, 104 Stat. 4978. The Act required an "order to show cause" to initiate all deportation proceedings. *Id.* § 545(a), 104 Stat. at 5061–62 (codified at 8 U.S.C. § 1252b (1994)). And it defined an "order to show cause" as "written notice . . . specifying" information such as "[t]he acts or conduct alleged to be in violation of law," "[t]he charges against the alien and the statutory provisions alleged to have been violated," and the fact that "[t]he alien may be represented by counsel." 8 U.S.C. § 1252b(a)(1) (1994). There was no need to include time-and-place information—that could be provided "in the order to show cause *or otherwise*." *Id.* § 1252b(a)(2)(A) (emphasis added). Meaning immigration courts could continue to follow up later with the omitted time-and-place information. *See* 8 C.F.R. § 242.1(b) (1995).

IIRIRA did a U-turn. Orders to show cause became "notice[s] to appear." 8 U.S.C. § 1229(a)(1). And every NTA had to "specify[] . . . [t]he time and place at which the proceedings [would] be held." *Id.* § 1229(a)(1)(G)(i). This new language foreclosed on the Attorney General's past ability to send time-and-place information in a second document—a change the Executive Branch immediately recognized. With IIRIRA's April 1, 1997, effective date approaching, the INS and the EOIR jointly issued a proposed rule to "implement[] the language of the amended Act indicating that the time and place of the hearing must be on the Notice to Appear." 62 Fed. Reg. 444, 449 (Jan. 3, 1997). The agencies said they would "attempt to implement this requirement as fully as possible by April 1, 1997," with the aid of "automated scheduling." *Id.* But the preamble to the proposed rule claimed that "such automated scheduling [would] not be possible in every situation (e.g., power outages, computer crashes/downtime[])."

5

*Id.* And the final rule—now codified at 8 C.F.R. § 1003.18[1]—states that the Executive "shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, *where practicable*." 62 Fed Reg. at 457 (emphasis added). A convenience Congress did not write into the bills passed by both Houses and presented to the President for approval.

For a time, executive agencies demonstrated their ability to take care that IIRIRA's requirements be faithfully executed, developing an "Interactive Scheduling System" ("ISS" for short) that "enable[d] the Department of Homeland Security . . . to enter case data and to schedule the initial master calendar hearing." *Uniform Docketing System Manual*, U.S. Dep't of Justice Executive Office for Immigration Review, Office of the Chief Immigration Judge, at I-2 (Rev. Sept. 2018), https://www.justice.gov/eoir/file/1157516/download ("Docketing Manual"). ISS ensured that every NTA would automatically "contain the date and time of hearing," *id.*, right down to the exact courtroom.[2] Then, for whatever reason, DHS stopped using ISS around May 2014, choosing instead to return to the two-step process for all removal proceedings.[3] The

---

[1] *See* 68 Fed. Reg. 9824, 9830 (Feb. 28, 2003) (transferring 8 C.F.R. § 3.18 to 8 C.F.R. § 1003.18).

[2] *See* Brief of Former BIA Chairman and Immigration Judge Paul Wickham Schmidt as *Amicus Curiae* in Support of Petitioner at 6, *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) (No. 17-459) ("ISS . . . allowed DHS to specify an exact date, time, and courtroom for the Master Calendar in the NTA, while also marking that date as now occupied by the new case.").

[3] *See* Defendant Executive Office for Immigration Review's Responses to Plaintiffs' First Set of Interrogatories

Executive's exception had circumvented Congress's command.

That decision received a cold reception at the Supreme Court. In *Pereira v. Sessions*, for example, the Court rejected the Justice Department's attempt to rely on an NTA lacking time-and-date information to trigger the "stop-time rule." 138 S. Ct. 2105, 2113–14 (2018).[4] Here we consider a different

---

at 8, attached as Ex. F. to Decl. of Glenda M. Aldana Madrid in Support of Motion for Summary Judgment, *Mendez Rojas v. Kelly*, No. 2:16-cv-01024 (W.D. Wash. Oct. 30, 2017), ECF No. 58-1, https://www.americanimmigrationcouncil.org/sites/default/fil es/litigation_documents/mendez-rojas_v_john_son_exhibits_in_support_of_plantiffs_motion_f or_summary_judgement.pdf. Between 2015 and 2018, "almost 100 percent" of "notices to appear" lacked "the time and date of the proceeding." *Pereira v. Sessions*, 138 S. Ct. 2105, 2111 (2018) (citation omitted).

[4] The government revived ISS after *Pereira*. *See* Memorandum from James R. McHenry III, Director, to All of EOIR (Dec. 21, 2018), https://www.justice.gov/eoir/file/1122771/download ("Following the Supreme Court's decision in *Pereira* . . . [a]ll three DHS components authorized to issue NTAs now have access to ISS. . . . DHS may utilize ISS in order to schedule hearings for specific dates and to reflect those scheduled hearings on NTAs."). Then it merged ISS's functionality into the EOIR Courts & Appeals System, which allows DHS users to "[s]chedule an initial master hearing for non-detained cases" "24 hours / 7 days a week." *EOIR Courts & Appeals System*

7

section of IIRIRA, but the issue is the same: whether the government's two-step notice scheme follows Congress's command. We hold it does not. Notice in steps or stages may be efficient or convenient, but "the personal liberty of individuals . . . cannot ever be abridged at the mere discretion of the [Executive], without the explicit permission of the laws." 1 William Blackstone, Commentaries *134 (George Sharswood ed., 1893) (1765).

**B.**

With the background painted, we turn to Madrid-Mancia, who entered the United States from Honduras without being admitted or paroled. She was immediately detained and served a putative NTA charging her as removable. The document advised Madrid-Mancia of the nature of her removal proceedings and the supporting legal authority. It also contained allegations about her specific conduct, and a citation to the statutory provision she allegedly violated. *See* 8 U.S.C. § 1229(a)(1)(A)–(D). The putative NTA directed Madrid-Mancia that she was "required to provide the DHS, in writing, with [her] full mailing address and telephone number," and "notify the Immigration Court immediately" of any changes in this information. A.R. 118. It also warned Madrid-Mancia that "a removal order may be made by the immigration judge in [her] absence" if she failed to appear when summoned. *Id.* But the document did not tell Madrid-Mancia when her removal hearing would take place. Only that the hearing would occur on "a date to be set at a time to be set." A.R. 117. Madrid-

*(ECAS) – Online Filing: Frequently Asked Questions*, U.S. Dep't of Justice Executive Office for Immigration Review (Sept. 23, 2022), https://www.justice.gov/eoir/ecas/dhs-FAQs (select "Q: What are the benefits of ECAS?" hyperlink).

8

Mancia acknowledged service and provided a mailing address where she planned to reside.

Around April 2014, Madrid-Mancia moved from the address she provided to a new residence.[5] Years later, in August 2017, the Newark Immigration Court mailed a document captioned "Notice of Hearing in Removal Proceedings" to the address Madrid-Mancia provided at the border. A.R. 116. It stated that her hearing was scheduled for "Aug[ust] 30, 2017 at 1:00 P.M." A.R. 116. But it did not provide information on the nature of her proceedings, the government's allegations, or the statutory provision she allegedly violated. Madrid-Mancia claims she never received this document and, when she did not appear at the hearing, an Immigration Judge ordered her removed in absentia.

In October 2019, U.S. Immigration and Customs Enforcement sent Madrid-Mancia a letter requesting that she appear before a Deportation Officer. Madrid-Mancia complied and voluntarily reported as directed. There, Madrid-Mancia learned she had been ordered removed in absentia. She

---

[5] About a month later, she "went to the Mount Laurel ICE Office to change [her] address." A.R. 99. But "they told [her] that there was no way for [her] to change [her] address since [she] was not in their system." A.R. 99. Since Madrid-Mancia's cousin still lived at the original address, she "knew that [she] could rely on him to regularly check the mail for [her] so that [she did] not miss any documentation." A.R. 99. Madrid-Mancia claims she either went to the original address or called her cousin every three days to see if she received anything from immigration authorities.

promptly moved to reopen her proceedings and rescind her in absentia removal order for lack of proper notice.

The IJ denied Madrid-Mancia's motion, and the Board of Immigration Appeals dismissed her appeal. Madrid-Mancia timely petitioned for review.[6]

---

[6] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and dismissed the appeal on June 7, 2021. Madrid-Mancia timely petitioned for review on July 7, 2021, and we have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's written opinion and the underlying IJ ruling "only insofar as the BIA defers to it." *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010). And we review the agency's denial of Madrid-Mancia's motion to reopen her proceedings and rescind her removal order for an abuse of discretion. *Darby v. Att'y Gen.*, 1 F.4th 151, 159 (3d Cir. 2021). Reversal is warranted only if the agency acted in a manner that was "arbitrary, irrational, or contrary to law." *Id.* We review all the agency's legal conclusions de novo. *Id.*

Madrid-Mancia suggests we should also review a decision the BIA issued in response to a second motion to reopen that she filed directly with the BIA. But "[b]ecause [Madrid-Mancia] has not petitioned for review of the [BIA's May 2022 decision], we lack jurisdiction to review it." *Camara v. Att'y Gen.*, 580 F.3d 196, 201 & n.10 (3d Cir. 2009). Still, Madrid-Mancia has properly sought review of the BIA's June 2021 decision. And that decision presents two preserved issues for our review: 1) whether Madrid-Mancia's defective NTA alone requires reopening and rescission given the notice requirement in 8 U.S.C. § 1229a(b)(5)(A); and 2) whether Madrid-Mancia has rebutted the presumption of delivery

10

**II.**

Congress empowered the Attorney General to order an alien removed in absentia after providing proper written notice. That notice always requires an NTA containing time-and-place information. In cases involving "any change or postponement in the time and place of [removal] proceedings," 8 U.S.C. § 1229(a)(2)(A), the alien must receive additional notice specifying "the new time or place of the proceedings," *id.* § 1229(a)(2)(A)(i). Madrid-Mancia's putative NTA lacked the time and date of her removal hearing. And because no hearing at all had been scheduled, the additional "Notice of Hearing" the Immigration Court sent Madrid-Mancia identified a time or place but did not communicate any "change" or "postponement." Given the Attorney General's failure to provide proper written notice, we will grant Madrid-Mancia's petition for review and remand for reopening and rescission.

**A.**

Our analysis of IIRIRA's in absentia removal provision requires us to "proceed[] methodically" through the statute's text. *Badgerow v. Walters*, 142 S. Ct. 1310, 1317 (2022). The goal, as always, is to give effect to the legislature's charge, *Brown v. Barry*, 3 U.S. (3 Dall.) 365, 367 (1797), as expressed in the text's "ordinary meaning . . . at the time Congress enacted the statute," *Perrin v. United States*, 444 U.S. 37, 42 (1979). This is a "fundamental canon of statutory

---

despite the no-notice provision in 8 U.S.C. § 1229a(b)(5)(B). Our decision on the first issue is sufficient to resolve this petition. Madrid-Mancia prevails because the government gave her a putative NTA without time-and-date information. *See infra* Section II.B.

11

construction." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) (quoting *Perrin*, 444 U.S. at 42). *See also Minor v. Mechanics' Bank of Alexandria*, 26 U.S. (1 Pet.) 46, 64 (1828). We interpret the language using "all the standard tools of interpretation," *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019), reading the words "in their context and with a view to their place in the overall statutory scheme," *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1888 (2019) (citation omitted). *See also United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386 (1805) ("It is undoubtedly a well established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole."). And where these efforts lead to multiple ordinary meanings, we adopt "the best reading" of the statutory text. *Yellen v. Confederated Tribes of Chehalis Rsrv.*, 141 S. Ct. 2434, 2442 (2021).

The removal provision of IIRIRA states that "[a]ny alien who, after written notice required under paragraph (1) or (2) of section 1229(a) of this title has been provided to the alien . . . , does not attend a proceeding under this section, shall be ordered removed in absentia if [the government] establishes by clear, unequivocal, and convincing evidence that the written notice was so provided." 8 U.S.C. § 1229a(b)(5)(A). The removal mandate (an alien who misses a removal hearing must be ordered to leave the country) comes with a condition precedent (the alien must have received the required notice before the hearing).[7] Meaning an alien cannot be ordered

---

[7] We have already held that an NTA lacking time-or-place information does not "deprive[] an immigration judge of jurisdiction over the removal proceedings." *See Nkomo v. Att'y*

12

removed in absentia without proper notice. The rescission provision mirrors the removal provision. It states that an in absentia removal order "may be rescinded . . . at any time if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title." *Id.* § 1229a(b)(5)(C)(ii). Both sections invite the question: what kind of notice is required under paragraphs (1) and (2) of § 1229(a)?

IIRIRA provides the answer. The notice under paragraph (1) is a "[n]otice to appear," or again, NTA for short. *Id.* § 1229(a)(1). IIRIRA states that every NTA must "specify[]" several pieces of case-initiating information, [8] including the "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). Sometimes plans change and the agency needs to move the time or place of an alien's

---

*Gen.*, 930 F.3d 129, 131 (3d Cir. 2019). Our holding today leaves *Nkomo*'s rule intact. We merely clarify the kind of notice the government must provide before it can order an alien removed in absentia.

[8] Specifically: (A) "[t]he nature of the proceedings against the alien," (B) "[t]he legal authority under which the proceedings are conducted," (C) "[t]he acts or conduct alleged to be in violation of law," (D) "[t]he charges against the alien and the statutory provisions alleged to have been violated," (E) information about representation by counsel, (F) "[t]he requirement that the alien must immediately provide (or have provided) the Attorney General with a written record of an address and telephone number (if any) at which the alien may be contacted respecting proceedings," and (G) "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1).

13

removal proceedings. That is where notice under paragraph (2) comes in: "in the case of any change or postponement in the time and place of such proceedings," the government must inform the alien of "the new time or place of the proceedings." *Id.* § 1229(a)(2)(A). IIRIRA aptly calls this other notice a "[n]otice of change in time or place of proceedings."[9] *Id.* § 1229(a)(2).

These provisions entitle Madrid-Mancia to relief. The government needed to give Madrid-Mancia "written notice required under paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(A). But it gave her a putative NTA that omitted the time and date of her hearing, even though notice under paragraph (1) requires "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). And it gave her a so-called "Notice of Hearing" that scheduled the time and date of her hearing, even though notice under paragraph (2) is

---

[9] The Justice Department prefers a different label in its briefing: a "Notice of Hearing" or "NOH." *See, e.g.*, Response Br. 4. A term likely borrowed from the form it mailed Madrid-Mancia captioned "Notice of Hearing in Removal Proceedings." A.R. 116. But that is not what Congress said, and one needs no years of law school to see the difference between a "notice of hearing" and a "[n]otice of change in time or place of proceedings." *See* 8 U.S.C. § 1229(a)(2). While "headings and titles are not meant to take the place of the detailed provisions of the text," *Bhd. of R.R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 528 (1947), the label here confirms what the following provision makes clear: a second notice is only applicable "in the case of any change or postponement in the time and place of [removal] proceedings." 8 U.S.C § 1229(a)(2)(A).

applicable only "in the case of any change or postponement in the time and place of such proceedings." *Id.* § 1229(a)(2)(A). Both documents are glasses half full that leave Madrid-Mancia without the kind of "written notice required under paragraph (1) or (2)." *Id.* § 1229a(b)(5)(A).

**B.**

The Justice Department concedes that Madrid-Mancia's putative NTA omitted the time and date of her removal proceeding. But it argues she still received sufficient notice because the word "or" in the removal provision means it only needed to provide Madrid-Mancia with *either* an NTA under paragraph (1) *or* a "Notice of Hearing" under paragraph (2). *See* Response Br. 10–11 ("Notice under either subsection (a)(1) or (a)(2) is 'sufficient' . . . ."); Gov't Suppl. Br. 13–14 ("[S]ervice of *either* a compliant NTA *or* a compliant NOH authorizes an in absentia removal."). According to the Department, this disjunctive phrasing makes Madrid-Mancia's defective NTA immaterial. Madrid-Mancia got a "Notice of Hearing," A.R. 116, and that alone, it concludes, is enough for in absentia removal.

That is not enough because § 1229a(b)(5)(A) always requires a complete NTA. And the Attorney General cannot cure defects in an NTA by sending out a self-styled "Notice of Hearing" because announcing the time and date of a removal hearing for the first time is not a "change or postponement" in the time or place. 8 U.S.C. § 1229(a)(2)(A).

**1.**

We look at the text and structure of the removal provision, mindful that interpretation should not be "confined

15

to a single sentence" because "the text of the whole statute gives instruction as to its meaning." *Maracich v. Spears*, 570 U.S. 48, 65 (2013). The statute authorizes in absentia removal only "after written notice *required* under paragraph (1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(A) (emphasis added). So when and what kind of notice is "required" is spelled out in paragraphs (1) and (2). *Id.*

Paragraph (1) applies to all "removal proceedings under section 1229a." *Id.* § 1229(a)(1). And it states that aliens "shall be given" "a 'notice to appear'" containing "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i); *see Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480 (2021) ("The singular article 'a' [in § 1229(a)] stubbornly require[s] 'a' written notice containing all the required information."). Paragraph (2) places another requirement on the Executive, but only "in the case of any change or postponement in the time and place of such proceedings." 8 U.S.C. § 1229(a)(2)(A). Here, "a written notice shall be given" to the alien disclosing "the new time or place of the proceedings." *Id.* § 1229(a)(2)(A)(i). So in every case, an alien must receive an NTA containing the time and place of the removal hearing. Additional notice is only "required," *id.* § 1229a(b)(5)(A), under paragraph (2) if the agency changes or postpones the time or place of the hearing. All showing that the notice requirement in paragraph (2) applies along with—not in place of—the notice requirement in paragraph (1).

The structure of § 1229(a) similarly shows that a "[n]otice of change in time or place of proceedings," *id.* § 1229(a)(2), may supplement—but not substitute—a "[n]otice to appear," *id.* § 1229(a)(1). *See* 1 Edward Coke, The First Part of the Institutes of the Laws of England § 728, at

16

381a (19th ed. 1832) (1628) ("[I]t is the most naturall and genuine exposition of a statute to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers."). Paragraph (1) contains an exhaustive list of information that "shall be given" "[i]n removal proceedings under section 1229a." 8 U.S.C. § 1229(a)(1). It requires that the government give notice of the "nature of the proceedings," the agency's "legal authority," the "acts or conduct alleged to be in violation of law," and the "charges against the alien." *Id.* § 1229(a)(1)(A)–(D). Paragraph (2) requires none of this. It merely obligates the government to keep an alien informed of any "change[s] or postponement[s]" to the "time and place" of her proceedings. *Id.* § 1229(a)(2)(A).

These textual and structural differences demonstrate the distinct purposes of paragraphs (1) and (2). *See* 1 Blackstone, Commentaries *60 ("[T]he most universal and effectual way of discovering the true meaning of a law, when the words are dubious, is by considering the *reason* and *spirit* of it; or the cause which moved the legislator to enact it."). A "written notice" is "required under paragraph (1)," 8 U.S.C. § 1229a(b)(5)(A), in all "removal proceedings under section 1229a," *id.* § 1229(a)(1). It must contain "[t]he time and place at which the proceedings will be held." *Id.* § 1229(a)(1)(G)(i). But a "written notice" is "required under paragraph . . . (2)," *id.* § 1229a(b)(5)(A), only "in the case of any change or postponement in the time and place of such proceedings," *id.* § 1229(a)(2)(A).

As best read, the use of "or" in § 1229a(b)(5)(A) means the government may remove an alien in absentia after providing her with a compliant NTA or, "in the case of any change or postponement," a compliant NTA plus a second

17

notice that informs her of the "new time or place of the proceedings." *Id.* § 1229(a)(2)(A). Sufficient notice can be a compliant NTA without a second notice. But it cannot consist of a putative second notice without a compliant NTA.

**2.**

All agree Madrid-Mancia's putative NTA lacked the time and date of her removal proceeding. And the Justice Department does not (and could not) argue that the "Notice of Hearing" it mailed Madrid-Mancia communicated a "postponement" in the hearing time. Instead, it states that the "Notice of Hearing" announced a "change" in the time of Madrid-Mancia's hearing—from "to be set" to a date certain. In a vacuum, the word "change" might have this broad meaning. *See Change*, Webster's Third New International Dictionary 372 (1993) ("to make different"). Or it may mean something much narrower, such as "[a]n alteration; a modification or addition; [or] substitution of one thing for another." *Change*, Black's Law Dictionary 231 (6th ed. 1990).

Hopeless ambiguity? Hardly, once we apply the traditional tools of statutory interpretation to reach the "best interpretation," *Kisor*, 139 S. Ct. at 2448 (Kavanaugh, J., concurring), that explains "how a reasonable person, conversant with the relevant social and linguistic conventions, would read the text in context," John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2392–93 (2003).

Context shows the narrow definition of "change" fits best within paragraph (2). That is, when the provision states that it applies only "in the case of any change . . . in the time" of removal proceedings, the word "change" presupposes a time has already been set. 8 U.S.C. § 1229(a)(2)(A). Clue number

18

one: the immediately preceding statutory provision requires the agency to set an initial time and place for the removal hearing. *See id.* § 1229(a)(1)(G)(i) (requiring all NTAs to inform the alien of "[t]he time and place at which the proceedings will be held"). Clue number two adds more: once the agency has set an initial time for the hearing and the time changes, paragraph (2) requires the agency to tell the alien of "the new time or place of the proceedings." *Id.* § 1229(a)(2)(A)(i). Not the "initial time," or even "the time."[10] But "the *new* time." *Id.* (emphasis added).

Both clues confirm what common sense suggests: IIRIRA requires the agency to give an alien time-and-place information in her NTA, and then let her know if that information changes. The agency cannot opt out of the time-and-place requirement and then cure any deficiencies by providing that information—for the first time—in a document reserved to communicate "the new time or place" of proceedings "in the case of any change or postponement." *Id.* § 1229(a)(2)(A).

Ordinary usage illustrates the meaning of the text in context.[11] Any reasonable reader would understand paragraph

---

[10] Paragraph (1) already requires "[t]he time." 8 U.S.C. § 1229(a)(1)(G)(i).

[11] The statutory history discussed in Section I.A solidifies our understanding. As outlined, the government could serve an "order to show cause" without time-and-place information before IIRIRA. *See* 43 Fed. Reg. at 36,239 (stating that time-and-place information "may be stated in the order [to show cause] or *may be later specified*" (emphasis added)); 8 U.S.C. § 1252b(a)(2)(A) (1994) (stating that time-and-place

(2)'s use of "change" to mean a change from something to a different something—not from nothing to something. *Cf. In re Brewer*, 863 F.3d 861, 876 (D.C. Cir. 2017) ("Ex nihilo nihil fit."); William Shakespeare, King Lear, act 1, sc. 1 (Bernhard Tauchnitz 1868) ("Nothing will come of nothing."). Examples abound. No reasonable diner would expect to get seating for two by calling a restaurant to "change" a reservation he never made. Confusion, not a boarding pass, would follow a traveler's request to "change" a flight from business to first class when no seat of any kind had been purchased. Informing the dealership that you want to "change" your new convertible from metallic blue to classic silver only gets you a different color if you have already bought the car. Calling the first try a second thought is a clumsy (and likely unsuccessful) way to make plans or purchases.

---

information could be provided "in the order to show cause *or otherwise*" (emphasis added)). But IIRIRA extinguished the government's ability to provide time-and-place information at a later date. It required (and still requires) service of "a 'notice to appear' . . . specifying . . . [t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1)(G)(i). "When Congress amends legislation" like this, we "must 'presume it intends [the change] to have real and substantial effect.'" *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995)). IIRIRA requires the government to serve NTAs that inform aliens of the time and place of their proceeding. Though agency regulations only require time-and-place information in an NTA "where practicable," 8 C.F.R. § 1003.18(b), "self-serving regulations never 'justify departing from the statute's clear text.'" *Niz-Chavez*, 141 S. Ct. at 1485 (quoting *Pereira*, 138 S. Ct. at 2118).

So too with the attempt to order Madrid-Mancia removed in absentia based on a provision designed only to communicate *changes* in the time or place of her removal proceeding. The provision only applies when changes in the time or place arise, not when the government first sets the schedule. A conclusion the Supreme Court endorsed in *Pereira*:

> By allowing for a "change or postponement" of the proceedings to a "new time or place," paragraph (2) presumes that the [g]overnment has already served a "notice to appear under section 1229(a)" that specified a time and place as required by § 1229(a)(1)(G)(i). Otherwise, there would be no time or place to "change or postpon[e]."

138 S. Ct. at 2114. Justice Alito agreed, writing that "[p]aragraph (2) undoubtedly assumes that notices to appear will state the 'time and place' of the removal proceeding as required by § 1229(a)(1)." *Id.* at 2127 (Alito, J., dissenting). Meaning the Court reads paragraph (2) to mean what it says: it only applies "in the case of any change or postponement." 8 U.S.C. § 1229(a)(2)(A).[12]

---

[12] So do three circuits. *See Laparra-Deleon v. Garland*, 52 F.4th 514, 520 (1st Cir. 2022) ("By concluding that 'there would be no time or place to "change or postpone"' unless a 'notice to appear' under § 1229(a)(1) itself had set such a 'time,' *Pereira* necessarily reads 'change' in § 1229(a)(2) to refer to 'the substitution of one thing for another' or 'the succession of one thing in place of another . . . .'" (cleaned up)

Because the Justice Department never changed or postponed Madrid-Mancia's hearing, no written notice was required under paragraph (2). *See id.* The government was, however, obligated to give her proper notice under paragraph (1). *See id.* § 1229(a)(1). Because it failed to fulfill this obligation, it cannot establish "by clear, unequivocal, and convincing evidence that the written notice was so provided."

---

(citations omitted)); *Singh v. Garland*, 24 F.4th 1315, 1320 (9th Cir. 2022) ("This text presupposes—and common sense confirms—that the Notice to Appear provided in paragraph (1) must have included a date and time because otherwise, a 'change' in the time or place is not possible."), *reh'g en banc denied*, 51 F.4th 371 (9th Cir. 2022); *Rodriguez v. Garland*, 15 F.4th 351, 355 (5th Cir. 2021) (allowing relief following a defective NTA under *Niz-Chavez* but not *Pereira*), *reh'g en banc denied*, 31 F.4th 935, 937 (5th Cir. 2022) (Duncan, J., concurring in denial of en banc rehearing) ("The alien never got an *initial* 'time or place,' so there was nothing to 'change' and any subsequently set 'time or place' wouldn't be 'new.'"). The circuits splitting the other way have not evaluated the ordinary meaning of "change" or "postponement" in paragraph (2), nor have they analyzed the key passage in *Pereira*. *See Santos-Santos v. Barr*, 917 F.3d 486, 491–92 (6th Cir. 2019) ("Although Santos-Santos may have met his burden in showing that he did not receive a notice in accordance with paragraph (1), he did not meet his burden to show lack of notice in accordance with paragraph (2)."); *Dacostagomez-Aguilar v. Att'y Gen.*, 40 F.4th 1312, 1318 n.3 (11th Cir. 2022) ("[A] paragraph (2) notice can inform a person of a 'change or postponement in the time and place' of removal proceedings even if the initial hearing information appeared in a follow-on notice of hearing.").

22

*Id.* § 1229a(b)(5)(A). Given the lack of proper notice, the agency acted beyond its statutory authority when it ordered Madrid-Mancia removed in absentia.

## C.

Changing tack, the Justice Department cites the no-notice provision in 8 U.S.C. § 1229a(b)(5)(B) to suggest Madrid-Mancia forfeited her right to any notice of the time or place of her removal hearing. Or any notice at all because the Department reads § 1229a(b)(5)(B) to impose "a statutory duty" on aliens to keep their "*current address* on file with the immigration court." Response Br. 2 (emphasis added). So, the Department concludes, since Madrid-Mancia moved from the address she provided at the border, she lost any right to further information about her removal. That conclusion finds not a bit of support in the text.

Here is what the no-notice provision says: "[n]o written notice shall be required" under the removal provision "if the alien has failed to provide the address required under section 1229(a)(1)(F) of this title." 8 U.S.C. § 1229a(b)(5)(B). So we look to that cross-reference which requires "an address . . . at which the alien may be contacted respecting proceedings." *Id.* § 1229(a)(1)(F)(i). Meaning, once again, the Justice Department swapped out the words written by Congress for language it prefers. Thankfully for aliens and citizens alike, that is not the way our Republic works.

Because, of course, "an address" does not necessarily mean the alien's current residential address. *See Renaut v. Lynch*, 791 F.3d 163, 168 (1st Cir. 2015) ("It is also not apparent to us why the BIA (and the government in its briefing) assume 'address' means residential address."). "An address"

23

where the alien "may be contacted" means just that: a place where a person can be contacted. The alien's current residential address. Or her cousin's. Or a PO box. So long as that address exists, it is sufficient. *Cf., e.g.*, *Dragomirescu v. Att'y Gen.*, 44 F.4th 1351, 1353 (11th Cir. 2022) (stale address with no alternative); *Gudiel-Villatoro v. Garland*, 40 F.4th 247, 248 (5th Cir. 2022) (no address ever provided); *Spagnol-Bastos v. Garland*, 19 F.4th 802, 804 (5th Cir. 2021) (nonexistent address).

That is the case here. When she arrived in the United States, Madrid-Mancia provided her cousin's residence as "an address . . . at which [she] may be contacted respecting proceedings." 8 U.S.C. § 1229(a)(1)(F)(i). Then she moved and tried to change her address with the agency. When that failed, she continued using her cousin's address, regularly checking to see if she had received any immigration-related mail. *Cf. Santana Gonzalez v. Att'y Gen.*, 506 F.3d 274, 279–80 (3d Cir. 2007) (stating alien may be able to rebut presumption of delivery where alien moved but had her "uncle, his wife and son regularly sen[d] [her] mail that was addressed to [her]"). All enough to make the no-notice provision inapplicable.

## III.

The Justice Department prefers a system of notice to aliens different from the law passed by Congress and signed by the President. Perhaps its policy makes sense. No matter; "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate," nor can it altogether disregard Congress's command. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014). Because Madrid-Mancia's in absentia removal did not follow the law given by Congress, we

24

will grant her petition for review and remand for the agency to rescind her removal order.